1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF GEORGIA
2                          NEWNAN DIVISION

3

4    JOCK WALKER;                  )
     TANEKA WALKER                 )
5                                  )
                   PLAINTIFF,      )
6                                  )        CIVIL ACTION
              VS.                  )        FILE NO. 3:12-CV-175-TCB
7                                  )
                                   )        NEWNAN, GEORGIA
8    TENSOR MACHINERY, LTD,        )        MARCH 26, 2015, 2014
                                   )        10:00 A.M.
9                   DEFENDANT.     )
     _____)

10

11

12           TRANSCRIPT OF PRETRIAL CONFERENCE HEARING
             BEFORE THE HONORABLE TIMOTHY C. BATTEN, SR.
13                 UNITED STATES DISTRICT JUDGE

14

15

16   APPEARANCES:

17       FOR THE PLAINTIFF:          CHARLES BLASKA
                                     DANA NORMAN
18                                   BRIAN PARKER
                                     ATTORNEYS AT LAW
19
         FOR THE DEFENDANT:          MATTHEW G. MOFFETT
20                                   JASON HERGENROETHER
                                     CHRISTOPHER JOHNSON
21                                   ATTORNEYS AT LAW

22

23   LORI BURGESS, OFFICIAL COURT REPORTER
     (404) 215-1528
24
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
25   PRODUCED BY CAT.

1         THE COURT:  GOOD MORNING GENTLEMEN.

2         MR. NORMAN:  GOOD MORNING

3         MR. MOFFETT:  GOOD MORNING, YOUR HONOR.

4         THE COURT:  HOW ARE Y'ALL DOING TODAY?

5         DANA, YOU ARE NOT OF COUNSEL YET, OR ON RECORD?

6         MR. NORMAN:  YOUR HONOR, I ELECTRONICALLY FILED AN

7    APPEARANCE YESTERDAY.

8         THE COURT:  OH YOU DID?  OKAY.

9         MR. MOFFETT:  NO ISSUE WITH THAT.

10        THE COURT:  MATT, HOW YOU DOING?

11        MR. MOFFETT:  DOING GOOD, JUDGE.  GOOD TO SEE YOU.

12        THE COURT:  GOOD TO SEE YOU.  OKAY.  WELL, WE'VE

13   GOT A LOT TO TALK ABOUT.  WE WILL BEGIN BY DEALING WITH

14   DEFENDANT'S MOTION IN LIMINE, DOCUMENT NO. 79.  A LOT OF

15   THESE MOTIONS, OR THIS MOTION, IT'S COMPONENTS, ARE LARGELY

16   COMPRISED OF JUST STATEMENTS OF LAW THAT NO ONE WOULD

17   CONTEST, AND IT'S KIND OF LIKE ASKING A MOTION TO MAKE SURE

18   THE OTHER SIDE FOLLOWS THE RULES.  AND SO THERE IS NOT A

19   WHOLE LOT OF THOUGHT THAT HAS TO BE GIVEN TO THESE.  LIKE

20   THE FIRST ONE, EXCLUDE INFORMATION REGARDING THE FINANCIAL

21   CONDITION OF THE PARTIES.  OKAY, THAT WILL BE GRANTED,

22   BARRING SOME UNUSUAL CIRCUMSTANCE WHERE THE PLAINTIFF WOULD

23   INTRODUCE INFORMATION OF FINANCIAL CONDITION, THAT'S NOT

24   GOING TO BE ADMISSIBLE IN THE CASE.

25        THE NEXT ONE IS TO EXCLUDE HEARSAY TESTIMONY.  I

1    GENERALLY DO THAT.

2            MR. MOFFETT:  WE ACTUALLY MOVED FOR THAT?  OKAY.

3            THE COURT:  AND PROHIBIT SYMPATHY, PLEAS, OR

4    PREJUDICIAL APPEALS TO THE JURY AND SEND-A-MESSAGE AND

5    GOLDEN RULE ARGUMENTS.  I AGREE WITH ALL OF THAT, EXCEPT

6    THAT I AM NOT SURE THAT GOLDEN RULE ARGUMENTS ARE IMPROPER

7    WHEN THEY ARE RELATED TO LIABILITY.

8            MR. MOFFETT:  I AGREE.

9            THE COURT:  SO SUBJECT TO THAT QUALIFICATION, THE

10   COURT WILL GRANT THAT AND INFORM THE PLAINTIFFS NOT TO CROSS

11   THE LINE INTO PREJUDICIAL, SUBJECTIVE, OR SYMPATHETIC PLEAS

12   REGARDING DAMAGES AND PUNISHMENT.

13           AND THEN THERE IS THE MOTION TO PROHIBIT

14   HYPOTHETICAL QUESTIONS POSED TO WITNESSES.  I AM -- I FIND

15   THAT RULING ON THIS WOULD BE PREMATURE.  I'VE GOT TO HEAR

16   THE QUESTION.  I DON'T THINK THERE IS A BLANKET PER SE RULE

17   PROHIBITING HYPOTHETICAL QUESTIONS TO NONEXPERT WITNESSES.

18   IT JUST DEPENDS ON THE CONTEXT.  IT IS WAY TOO VARIED TO

19   ISSUE A RULING IN ADVANCE, SO I WILL ABSTAIN FROM RULING ON

20   THAT PART OF IT.

21           NEXT IS THE MOTION TO PROHIBIT LAY WITNESS

22   TESTIMONY REGARDING MEDICAL QUESTIONS, AND THAT'S KIND OF

23   THE SAME THING.  I MEAN, OF COURSE A LAY WITNESS IS NOT

24   GOING TO BE ABLE TO TESTIFY AS TO BROKEN BONES OR SURGERIES

25   OR THINGS LIKE THAT THAT THE PLAINTIFF EXPERIENCED, BUT

```
 1    BECAUSE THE DEFENDANTS DO NOT IDENTIFY ANY PARTICULAR

 2    WITNESS OR TESTIMONY TO WHICH THEY OBJECT, I THINK A RULING

 3    AT THIS TIME WOULD BE PREMATURE.  BUT YOU'VE GOT MY

 4    ATTENTION THAT THIS IS IMPORTANT TO YOU.  IT'S ON MY RADAR.

 5              NEXT IS THE MOTION TO ADMIT PHOTOGRAPHS,

 6    SCHEMATICS OF THE SZ STRANDING LINE AND DUAL BINDER

 7    MACHINES.  I HAVEN'T SEEN THE PICTURES.  I DON'T THINK THE

 8    DEFENDANTS HAVE OFFERED THE PICTURES YET.  I DON'T KNOW WHY

 9    THEY WOULD NOT BE ADMISSIBLE.

10              MR. MOFFETT:  I THINK THERE IS AN AGREEMENT ON

11    THAT, JUDGE.

12              MR. HERGENROETHER:  WE STIPULATED ON THAT, YOUR

13    HONOR.

14              THE COURT:  OKAY.  THAT IS GOOD.  THEN I HAVE THE

15    DEFENDANTS ARE WANTING TO ADMIT CERTAIN MEDICAL RECORDS

16    INCLUDING THE RECORDS OF DR. SLAPPEY.  THE PLAINTIFFS

17    OBJECTED TO THIS BECAUSE IT CONTAINS EVIDENCE OF WORKERS

18    COMPENSATION AND, UNDER THE COLLATERAL SOURCE RULE, SUCH

19    EVIDENCE IS BARRED.  I TEND TO AGREE WITH THAT.

20              MR. MOFFETT:  WE DO ALSO.  WE WOULD REDACT

21    ANYTHING THAT WOULD NOT BE ADMISSIBLE, JUDGE.  AND IN THE

22    DEPOSITIONS THAT I TOOK, I MOVED FOR ADMISSION OF THE

23    DOCUMENTS SUBJECT TO YOUR HONOR'S APPROPRIATE REDACTION OF

24    ANY COLLATERAL SOURCE EVIDENCE.

25              THE COURT:  ALL RIGHT.  THEN WE DON'T HAVE A
```

1   PROBLEM.  SO THAT APPLIES ALSO TO DR. PORTER, THE TWO PIECES

2   OF EVIDENCE YOU HAVE FOR HIM, AND THE OTHER PIECE OF

3   EVIDENCE FROM DR. SLAPPEY, THE JUNE 1ST OF 2011 CLINICAL

4   NOTE.  NOW WE TURN TO THE PLAINTIFF'S MOTION IN LIMINE.

5           MR. NORMAN:  YOUR HONOR, MAY I HAVE ONE ITEM OF

6   CLARIFICATION?

7           THE COURT:  YES.

8           MR. NORMAN:  WITH REGARD TO THE EXCLUSION OF

9   HEARSAY, EXPERTS OFTENTIMES RELY ON HEARSAY, AND I THINK

10  THEY ARE AUTHORIZED TO DO THAT.  ARE WE LIMITED IN THAT

11  REGARD AS WELL?

12          THE COURT:  NO.  EXPERTS CAN OFFER HEARSAY

13  TESTIMONY IF THE EVIDENCE UPON WHICH THEY RELIED, ALBEIT

14  HEARSAY, IS A SORT OF EVIDENCE THAT A WITNESS OF AN EXPERT

15  THAT IN THAT FIELD WOULD ORDINARILY RELY UPON.

16          MR. NORMAN:  AND ONE OTHER ITEM, YOUR HONOR,

17  REGARDING HEARSAY.  IF THERE IS AN ESTABLISHED EXCEPTION TO

18  THE HEARSAY RULE, WOULD HEARSAY THEN BE PERMISSIBLE?

19          THE COURT:  OH SURE.

20          MR. MOFFETT:  CAN I ASK ONE QUESTION, JUDGE?

21          THE COURT:  YES.

22          MR. MOFFETT:  ON YOUR HONOR'S RULING, WOULD THE

23  EXPERT, EVEN THOUGH THE EXPERT RELIES UPON THE HEARSAY,

24  NEVERTHELESS BE ABLE TO TESTIFY AS TO THE EXACT HEARSAY IN

25  FRONT OF THE JURY?

1          THE COURT:  YOU KNOW, IT JUST DEPENDS ON THE

2    NATURE OF THE HEARSAY AND HOW DETAILED HE IS TRYING TO GET

3    INTO IT.  I WILL NOT ALLOW AN EXPERT TO BE USED AS A MERE

4    CONDUIT FOR THE ADMISSION OF HEARSAY.  BUT IF IT'S PLAINLY

5    GERMANE TO HIS ANALYSIS AND IT'S IMPORTANT FOR THE JURY TO

6    UNDERSTAND THIS EVIDENCE, I WILL ALLOW IT.

7          I FEEL LIKE I AM TAKING A LAW SCHOOL TEST.

8          MR. MOFFETT:  IN A VACUUM.

9          THE COURT:  THERE IS NO ONE TO GRADE IT.

10          ALL RIGHT.  PLAINTIFF'S MOTION IN LIMINE, THE

11    PLAINTIFFS WANT TO PROHIBIT ANY REFERENCE TO BRAZILIAN LAW

12    AND SAFETY CODES.  I WILL GRANT THAT.

13          MR. MOFFETT:  YOUR HONOR, MAY I INQUIRE AS TO

14    THAT?  JUST BRIEFLY -- DO YOU WANT ME TO STAND, YOUR HONOR?

15          THE COURT:  NO.

16          MR. MOFFETT:  IN THE CROSS-EXAMINATION OF THE

17    PLAINTIFF'S ENGINEER EXPERT, AND THIS IS BASED ON HIS

18    DEPOSITION, I WOULD THINK THAT I WOULD BE ALLOWED TO ASK HIM

19    IF HE IS FAMILIAR WITH THE REGULATIONS THAT WOULD HAVE

20    APPLIED FOR THE SALE OF THIS MACHINE TO LUCENT IN BRAZIL.

21    IT WAS DESIGNED FOR LUCENT IN BRAZIL AND SOLD TO THEM IN

22    2000.  I ASKED HIM THAT IN HIS DEPOSITION.  HE SAID HE HAD

23    NO IDEA WHAT THE REGULATIONS ARE.  HE IS GOING TO TESTIFY TO

24    THE JURY THE AMERICAN REGULATIONS APPLY TO THIS MACHINE FOR

25    PURPOSE OF THIS ACCIDENT.  AND I AM JUST ASKING YOUR HONOR

1    IF I CAN EXAMINE THIS INDIVIDUAL EXPERT ON THAT ISSUE.

2            THE COURT:  WHAT IS THE RELEVANCE OF BRAZILIAN LAW

3    AND BRAZILIAN REGULATIONS AND SAFETY CODES?

4            MR. MOFFETT:  IT'S REALLY THE LACK OF RELEVANCE OF

5    AMERICAN SAFETY CODES AND REGULATIONS PURSUANT TO THE

6    DESIGN, MANUFACTURE, AND SALE OF A MACHINE TO A COMPANY FOR

7    USE IN BRAZIL.  THAT COMPANY SOLD THE MACHINE TO THE

8    PLAINTIFF'S EMPLOYER.  WE DIDN'T.  WE SOLD IT BASED ON A

9    CUSTOM ORDER AND DESIGN AND MANUFACTURE FOR BRAZIL.

10           THE COURT:  I AM NOT CHANGING MY RULING.  I DON'T

11   THINK IT IS PROPER TO GET INTO BRAZILIAN LAW AND INTO THE

12   BRAZILIAN SAFETY CODES BECAUSE THAT IS NOT RELEVANT.  WE ARE

13   HERE TO DECIDE THIS UNDER GEORGIA LAW.

14           MR. MOFFETT:  AND MY ONLY RESPONSE WOULD BE THE

15   ARGUMENT IS AGAINST MY CLIENT BASED ON A WARNINGS ISSUE FOR

16   A MACHINE THAT WAS SOLD FOR USE IN BRAZIL, NOT TO AMERICA

17   FOR USE IN AMERICA.  THAT OTHER COMPANY, WHO IS A NONPARTY,

18   SOLD TO ANOTHER NONPARTY.  THAT IS MY ONLY RESPONSE.  BUT I

19   RESPECT YOUR HONOR'S RULING.

20           THE COURT:  ALL RIGHT.  AND THEN WE HAVE THE ISSUE

21   WHERE THE PLAINTIFFS WANT TO PROHIBIT APPORTIONMENT OF FAULT

22   TO NONPARTY OFS -- IS IT FITEL?

23           MR. NORMAN:  YES, YOUR HONOR.

24           THE COURT:  THAT IS HOW YOU PRONOUNCE THAT?

25           MR. NORMAN:  YES, YOUR HONOR.

1          THE COURT:  WE WILL COME BACK TO THAT IN A MINUTE.

2    I AM GOING TO TAKE UP THAT ISSUE OF CERTIFICATION OF THE

3    QUESTION IN A MINUTE.

4          AND THEN THE PLAINTIFFS WANT TO PROHIBIT ARGUMENT

5    THAT OFS FITEL WAS A SOPHISTICATED USER AND/OR LEARNED

6    INTERMEDIARY.  I AM GOING TO DENY THIS MOTION.  I FEEL THAT

7    THE DEFENDANTS ARE CORRECT WHEN THEY SAY THAT THIS IS A

8    QUESTION FOR THE TRIER OF FACT WHO WHETHER OFS FITEL WAS A

9    SOPHISTICATED USER, WHETHER THE DEFENDANTS REASONABLY RELIED

10   ON OFS FITEL TO WARN END USERS ABOUT DANGEROUS PINCH POINTS

11   AND WHETHER PINCH POINTS ON THIS MACHINE WERE KNOWN

12   GENERALLY AND/OR SPECIFICALLY BY OFS FITEL ARE FACTUAL

13   DETERMINATIONS FOR THE JURY.

14          THE SAME RULING ON THE PLAINTIFF'S MOTION

15   REGARDING ASSUMPTION OF RISK.  I AM GOING TO ALLOW THAT TO

16   GO TO THE JURY.

17          THEN THE PLAINTIFFS WANT TO MOVE TO EXCLUDE

18   COLLATERAL SOURCES OF PAYMENT, WHICH OF COURSE THAT WILL BE

19   GRANTED.

20          MR. MOFFETT:  JUDGE, IS THAT SUBJECT TO ANY

21   TESTIMONY OFFERED BY THE PLAINTIFF THAT WOULD GIVE RISE TO

22   IMPEACHMENT BY USING COLLATERAL SOURCE?

23          THE COURT:  YES.  YES.

24          MR. MOFFETT:  THANK YOU.

25          THE COURT:  YES, IT IS SUBJECT TO THAT

1   QUALIFICATION.

2           NOW THE PLAINTIFFS REQUEST THAT THE COURT EXCLUDE

3   EVIDENCE AND ARGUMENT REGARDING UNRELATED INJURIES,

4   ILLNESSES, CONDITIONS, ACCIDENTS OR CLAIMS MADE BY WALKER,

5   AND THEY WANT TO LIMIT ANY SUCH TESTIMONY TO QUALIFIED

6   MEDICAL EXPERTS.  THE DEFENDANTS HAVE NO OBJECTION TO THE

7   EXTENT THEY ARE TRULY UNRELATED, BUT DEFENDANTS WISH TO

8   RESERVE THE RIGHT TO QUESTION MEDICAL WITNESSES AS TO

9   WHETHER CERTAIN ILLNESSES, INJURIES, CONDITIONS ARE TRULY

10  UNRELATED TO THE CURRENT CLAIMS ADVANCED BY WALKER, AND OF

11  COURSE THE DEFENDANTS HAVE THAT RIGHT.  SO I WILL GRANT THE

12  MOTION SUBJECT TO THAT QUALIFICATION.

13          MR. MOFFETT:  JUST FOR CLARIFICATION, JUDGE, WHAT

14  MIGHT BE UNRELATED TO THE ACCIDENT AND THE CRUSH INJURY TO

15  MR. WALKER'S FOOT MIGHT BE RELEVANT AND RELATED TO HIS CLAIM

16  THAT HE IS PERMANENTLY DISABLED AND UNABLE TO WORK.

17          THE COURT:  RIGHT.

18          MR. MOFFETT:  I DON'T KNOW IF WE MADE THAT

19  DISTINCTION CLEARLY IN OUR BRIEF, BUT THAT IS THE POINT WE

20  ARE MAKING.

21          THE COURT:  RIGHT.  I UNDERSTAND.

22          MR. MOFFETT:  THANK YOU.

23          THE COURT:  I AM GOING TO SUSTAIN OR GRANT THE

24  PLAINTIFF'S MOTION REGARDING EVIDENCE OF THE SUGGESTION THAT

25  MONEY WON'T UNDO THE DAMAGE AND INJURY THE PLAINTIFF MAY

1    HAVE SUSTAINED.  THAT IS NOT A PROPER ARGUMENT.

2           MR. MOFFETT:  WE AGREE WITH THAT, JUDGE.

3    CERTAINLY.

4           THE COURT:  AND NEXT THE PLAINTIFFS WANT TO

5    EXCLUDE TESTIMONY THAT OSHA RELIEVED DEFENDANTS OF A DUTY TO

6    WARN.  I GUESS THIS ISSUE IS TIED HAND IN GLOVE WITH THE

7    OTHER ISSUE OF APPORTIONMENT, IS IT NOT?  BECAUSE THE

8    DEFENDANTS ARE TRYING TO SHOW THAT OFS FITEL DID NOT SATISFY

9    ITS DUTY OF CARE AND DUTY TO WARN ITS EMPLOYEE WALKER, AND

10   THAT'S RELEVANT TO DETERMINATIONS REGARDING OFS'S LIABILITY

11   OR RESPONSIBILITY OR SUBJECT TO APPORTIONMENT, BUT OTHERWISE

12   NOT.  SO I AM GOING TO HOLD OFF RULING ON THIS UNTIL I GET

13   TO THAT QUESTION REGARDING THE APPORTIONMENT IN JUST A

14   MINUTE.

15          MR. MOFFETT:  AND THAT IS THE ARGUMENT WE ARE

16   MAKING.

17          THE COURT:  OKAY.  NOW, HOW ABOUT DR. PORTER'S AND

18   DR. SLAPPEY'S DEPOSITION TESTIMONY?  I MEAN, YOU KNOW, IT'S

19   200 PLUS PAGES OF TESTIMONY, AND YOU GUYS HAVEN'T GOTTEN

20   TOGETHER TO AGREE ON ANY OF THIS.  OR HAVE YOU?

21          MR. MOFFETT:  THEY GOT TOGETHER YESTERDAY.  I

22   THINK THEY'VE GOT IT NARROWED DOWN TO MAYBE A COUPLE OF

23   EXCHANGES WHERE THERE IS DISAGREEMENT, I BELIEVE.

24          MR. BLASKA:  THAT IS CORRECT.

25          MR. HERGENROETHER:  YEAH.  WE CAN --

1          MR. MOFFETT:  WHY DON'T YOU TELL HIM --

2          MR. HERGENROETHER:  AS TO DR. SLAPPEY WE ONLY HAVE

3   TWO ISSUES, THEY HAVE A HANDFUL MORE.  I CAN, IF YOU WOULD

4   LIKE --

5          THE COURT:  ALL RIGHT.  WHAT PAGE OF SLAPPEY?

6          MR. HERGENROETHER:  FOR OUR PURPOSES, THEY WOULD

7   LIKE TO HAVE OUT, ON PAGE 23, I BELIEVE, LINES 2 THROUGH 4.

8          MR. MOFFETT:  PAGE 23?

9          MR. HERGENROETHER:  YES.  AND THE QUOTE THAT THEY

10  ARE SPECIFICALLY LOOKING TO GET OUT IS ONE OF OUR ISSUES IS

11  PEOPLE THAT LEAVE WORK AND THEN THEY ASK US TO GIVE THEM AN

12  EXCUSE THE DAY AFTER, IT'S HARD FOR US TO DO.

13         MR. MOFFETT:  TELL HIM WHAT LINE.

14         MR. HERGENROETHER:  2 THROUGH 4.

15         THE COURT:  PAGE 23?

16         MR. HERGENROETHER:  YES.  LINES 2 THROUGH 4.

17         MR. MOFFETT:  THIS IS WHAT THE PLAINTIFF WANTS TO

18  EXCLUDE, RIGHT?

19         MR. HERGENROETHER:  YES.  AND I THINK THEIR

20  ARGUMENT IS COLLATERAL SOURCE.  WE CERTAINLY DISAGREE.  I

21  DON'T THINK THIS MENTIONS INSURANCE OR AN ALTERNATIVE SOURCE

22  OF PAYMENT.  IT JUST SAYS THAT PEOPLE LEAVE WORK AND THEY

23  WANT AN EXCUSE, AND IT IS HARD FOR US TO GIVE THEM ONE IF

24  THEY COME TO WORK THE DAY AFTER.

25         THE COURT:  SO FAR I SEE IT THE WAY THE DEFENDANTS

1   SEE IT, SO I WILL HEAR FROM THE PLAINTIFF.  THIS DOESN'T

2   TALK ABOUT WORKERS' COMP OR INSURANCE.

3           MR. BLASKA:  YOUR HONOR, THE REASON I EAR MARKED

4   THIS, I WANTED TO DISCUSS THIS, AND JASON AND I TALKED AT

5   LENGTH YESTERDAY, IS THE SCOPE OF THESE DEPOSITIONS.

6   BECAUSE THESE WERE BOTH TREATING DOCTORS.  WITHIN THE BOUNDS

7   OF WORKERS' COMP, THE CONTEXT OF THE DEPOSITION TALKS A LOT

8   ABOUT WORK, GETTING BACK TO WORK, WORK EXCUSES.  AND THIS ON

9   ITS OWN, I AGREE WITH WHAT YOU JUST SAID, WITHOUT THE

10  CONTEXT OF THE DEPOSITION, THE SUBJECT MATTER, THIS IS

11  HARMLESS.  I JUST WANTED TO EAR MARK EACH AND EVERY INSTANCE

12  THAT I SAW THAT WAS A LITTLE BIT OF OUT OF CONTEXT I THINK

13  FOR YOUR AVERAGE PERSON THAT IS NOT TREATING WITHIN COMP.

14          AND THAT WAS SOMETHING THAT WE WANTED TO BE ABLE

15  TO DISCUSS WITH YOU TO GET SOME CLARIFICATION AND GUIDANCE

16  ON HOW TO HANDLE IT.  NOT SO MUCH WITH DR. SLAPPEY'S

17  DEPOSITION, BUT WITH DR. PORTER'S DEPOSITION THERE ARE A LOT

18  OF INSTANCES WHERE IT'S REALLY A JUDGMENT CALL IN TERMS OF

19  WHETHER OR NOT IT IS GOING TO ALLUDE TO THE JURY THAT THIS

20  IS A WORKERS' COMPENSATION EVALUATION, OR IT IS DONE WITHIN

21  THE BOUNDS OF THAT SYSTEM.  SO WHILE I AGREE WITH JASON AND

22  THE COURT THAT THIS IS HARMLESS, IT DOESN'T MENTION

23  INSURANCE, THE ONLY REASON I BROUGHT UP ALL OF THESE

24  DIFFERENT POINTS THAT JASON AND I DISCUSSED YESTERDAY WAS

25  BECAUSE OF THAT REASON.

```
1              THE COURT:  LET'S GO TO DR. PORTER'S DEPOSITION
2    THEN.  AND IF THE PLAINTIFFS WOULD PLEASE TELL ME WHAT IS
3    WRONG WITH THAT DEPOSITION.
4              MR. BLASKA:  SURE.  OKAY, YOUR HONOR.  START WITH
5    PAGE 10 LINES 23 THROUGH 25.  THIS IS AFTER A STATEMENT WAS
6    MADE, MR. MOFFETT ASKED:  SO IF SOMEBODY COMES IN TO SEE
7    AFTER BEING HURT ON THE JOB -- THAT'S FINE, HE WAS HURT ON
8    THE JOB -- AND THEN THE STATEMENT IS ASKED:  AND YOU HAVE
9    TREATED INJURED WORKERS FOR ANY OF A NUMBER OF DIFFERENT
10   TYPES OF INJURIES?  AND THEN HE DISCUSSES INJURIES HE'S
11   TREATED.  AGAIN, I -- YOU KNOW --
12             THE COURT:  ARE THESE VIDEOTAPED DEPOSITIONS?
13             MR. MOFFETT:  SORRY, JUDGE?
14             THE COURT:  ARE THESE VIDEOTAPED DEPOSITIONS?
15             MR. MOFFETT:  YES, SIR.  AND I AM LAYING A
16   FOUNDATION, OBVIOUSLY.
17             THE COURT:  ALL RIGHT.
18             MR. BLASKA:  SO AGAIN, JUDGE, "INJURED WORKERS" TO
19   ME IS SYNONYMOUS WITH WORKERS COMP.  I KNOW IT'S NOT SAYING
20   STRAIGHT OUT WORKERS COMPENSATION HERE, BUT TO ME THIS IS
21   AWFULLY CLOSE.  AND FOR THIS TO REMAIN OUTSIDE OF, YOU KNOW,
22   THE EVALUATION, IN THE JURY'S EYES, THESE TYPES OF
23   STATEMENTS TO ME I THINK ARE -- I CAN'T AGREE TO LEAVE THESE
24   IN.  I AT LEAST HAVE TO BRING THEM TO YOUR ATTENTION TO
25   DETERMINE WHETHER OR NOT THIS IS APPROPRIATE.
```

1          THE COURT:  ALL RIGHT.  I RESPECTFULLY DISAGREE.

2     I DON'T THINK IT GETS TO THE POINT OF INVOKING COLLATERAL

3     SOURCE EVIDENCE, AND SO I AM NOT GOING TO STRIKE THE

4     TESTIMONY OF PAGE 11.  HAVE YOU GOT ANY OTHER OBJECTIONS?

5          MR. BLASKA:  YES I DO, YOUR HONOR.  THEY ARE GOING

6     TO BE FAIRLY SIMILAR, SO WE MAY BE ABLE TO MOVE THROUGH THEM

7     PRETTY QUICKLY.

8          THE COURT:  ALL RIGHT.

9          MR. BLASKA:  I AM GOING TO SKIP THE ONES, YOUR

10    HONOR, THAT ARE SIMILAR TO THAT JUST TO SAVE TIME.  JUST A

11    MOMENT.

12         MR. BLASKA:  OKAY PAGE 56, STARTING WITH LINE 2.

13         THE COURT:  ALL RIGHT.

14         MR. BLASKA:  MY ASSESSMENT FROM THIS POINT, FROM A

15    WORK PERSPECTIVE, SINCE --

16         THE COURT:  I AM NOT WITH YOU.  DID YOU SAY PAGE

17    56?

18         MR. BLASKA:  56, YOUR HONOR, THE END OF LINE 2.

19    I'M SORRY.

20         THE COURT:  WHICH DEPOSITION ARE YOU IN?

21         MR. BLASKA:  DR. PORTER.

22         THE COURT:  MY DEPOSITION OF DR. PORTER ON PAGE 56

23    LINE 2 IS THE WORD "BENEFIT."

24         MR. BLASKA:  OKAY.

25         MR. MOFFETT:  ARE YOU LOOKING AT THE MINISCRIPT

1    OVER THERE?  I WONDER IF THERE IS A DIFFERENT LAYOUT FOR

2    SOME REASON, BECAUSE I AM LOOKING AT A MINISCRIPT.

3          THE COURT:  MATT, ARE YOU ON THE SAME PAGE WITH

4    ME?

5          MR. MOFFETT:  I AM ON THEIR PAGE, BUT NICOLE HAS

6    THE ORIGINAL THAT SHE JUST UNSEALED.

7          THE COURT:  ALL RIGHT.  THERE IS ABOUT A FOUR LINE

8    DIFFERENCE BETWEEN THE TWO.

9          MR. BLASKA:  AM I BEHIND YOU OR IN FRONT OF YOU?

10          THE COURT:  YOU ARE AHEAD OF ME.  DO YOU SEE THAT

11    LINE THAT SAYS "SO THAT'S WHERE WE ARE"?  THAT IS ON LINE 7

12    OF MY MINISCRIPT, AND THAT'S ON LINE 2 OF THE ACTUAL

13    TRANSCRIPT.  SO WE HAVE TO LOOK AT THE ACTUAL TRANSCRIPT.

14          MR. BLASKA:  SO FOR YOU IT WOULD START ON 7, AND

15    STATES, MY ASSESSMENT AT THIS POINT FROM A WORK PERSPECTIVE,

16    SINCE THIS WAS A WORK RELATED INJURY, WE ALWAYS HAVE TO

17    COMMENT ON THAT.  AGAIN, I -- IT IS A JUDGMENT CALL.  I

18    DON'T THINK FROM A LAYPERSON'S PERSPECTIVE THAT WHEN THEY GO

19    SEE THE DOCTOR THE DOCTOR WILL SAY WE ALWAYS HAVE TO COMMENT

20    ON WHETHER YOU CAN WORK.  TO ME, THAT IS SUGGESTIVE THAT HE

21    IS DOING HIS EXAMINATION AND EVALUATION WITHIN THE BOUNDS OF

22    WORKERS COMPENSATION.  SO I WOULD ASK THAT, "SINCE THIS WAS

23    A WORK RELATED INJURY WE ALWAYS HAVE TO COMMENT ON THAT" IS

24    REDACTED OUT.

25          THE COURT:  I WOULD ASK THE DEFENDANTS WHAT IS THE

1    HARM IN TAKING IT OUT?  IT DOESN'T ADD ANYTHING?  IT DOES

2    POSSIBLY INJECT WORKERS COMP, I DON'T REALLY THINK IT DOES,

3    BUT IT MIGHT SORT OF.  WHY DON'T WE JUST TAKE IT OUT SO THE

4    SENTENCE WILL READ:  "SO THAT IS WHERE WE ARE, MY ASSESSMENT

5    AT THIS POINT, I FELT THAT THE PATIENT WAS COGNITIVELY

6    UNIMPAIRED."

7              MR. MOFFETT:  FINE.  NO OBJECTION.

8              THE COURT:  ALL RIGHT.

9              MR. BLASKA:  OKAY, YOUR HONOR.  PAGE 67, THIS IS

10   LIKELY GOING TO BE LINE 17 OR 18 ON YOUR TRANSCRIPT, AND THE

11   SENTENCE STARTS WITH:  "HE WAS STILL UNDER THE CARE."

12             THE COURT:  WHAT LINE IS IT ON YOURS?

13             MR. BLASKA:  IT IS 11 THROUGH 13.

14             THE COURT:  YEAH.  I AM USING THE ORIGINAL

15   TRANSCRIPT NOW, SO WE ARE ON THE SAME PAGE.

16             MR. BLASKA:  OKAY.

17             THE COURT:  HE WAS STILL UNDER THE CARE OF HIS

18   AUTHORIZED TREATING PHYSICIAN, THE ORTHOPEDIC SURGEON,

19   DR. SLAPPEY.

20             MR. BLASKA:  THIS IS, AGAIN, SEMANTICS.  I DON'T

21   KNOW IF THIS ONE -- IT'S KIND OF PART AND PARCEL OF THE

22   FIRST TESTIMONY THAT I BROUGHT TO YOUR ATTENTION.

23   "AUTHORIZED TREATING PHYSICIAN" IS A WORKERS COMPENSATION

24   TERM.  I MEAN, YES, HE IS HIS TREATING PHYSICIAN.  I DON'T

25   KNOW IF ANY OF THE JURORS WILL HAVE ANY EXPERIENCE WITH

1    WORKERS COMP, BUT THAT IS WHAT YOUR MAIN DOCTOR IS CALLED.

2            THE COURT:  JUST DELETE THAT ONE WORD,

3    "AUTHORIZED."

4            MR. MOFFETT:  ALL RIGHT.

5            MR. BLASKA:  OKAY, YOUR HONOR.  PAGE 68 STARTING

6    WITH LINE 3.  DR. PORTER STATES:  HE TOLD ME THAT WHEN HE

7    RETURNED TO WORK THAT HE WAS TREATED POORLY.  HE REPORTS

8    THAT HIS HUMAN RESOURCE MANAGER WAS QUESTIONING WHETHER HE

9    WAS REALLY INJURED AND WHETHER HE WAS REALLY HURTING.  HE

10   TOOK THIS PERSONALLY AND HE WAS OFFENDED BY IT.  AGAIN, IT

11   IS A CONTEXT OBJECTION.  I DON'T THINK IT STATES OUTRIGHT

12   THAT THIS IS A COMP ISSUE OR THAT THERE IS INSURANCE, JUST

13   SOMETHING I WANTED TO BRING TO YOUR ATTENTION TO GET

14   CLARIFICATION ON IT.  BUT I THINK YOU MAY HAVE ALREADY

15   ANSWERED THAT QUESTION.

16           THE COURT:  I AM NOT GOING TO ALTER THIS LANGUAGE.

17           MR. BLASKA:  OKAY.  FAIR ENOUGH.  OKAY, YOUR

18   HONOR, PAGE 84 STARTING WITH LINE -- THE QUESTION STARTS AT

19   LINE 16.  AND MY ISSUE WITH IT IS, THE RESPONSE TO "WHEN YOU

20   SAY DO NOT RETURN TO WORK AS INSTRUCTED, WHOSE

21   INSTRUCTIONS?"  ANSWER:  "WELL, I TOLD HIM HE NEEDED TO BE

22   BACK AT WORK IN A SEDENTARY CAPACITY."  NO ISSUE WITH THAT.

23   THEN HE SAYS:  HE TELLS ME -- HE TOLD ME AT THE TIME THAT HE

24   WAS AWAITING SOME SORT OF PAPERWORK FROM HIS EMPLOYER.  AS I

25   NOTED IN HERE, I DON'T KNOW WHAT THIS IS ABOUT.  HE

```
1    MENTIONED THAT HIS LAWYER DID NOT TELL HIM TO RETURN TO
2    WORK, I DON'T KNOW WHAT TO MAKE OF THIS EITHER."  I THINK
3    THAT THAT IS COLLATERAL SOURCE ISSUES.
4              THE COURT:  I AM INCLINED TO REMOVE THAT LANGUAGE,
5    MATT.
6              MR. MOFFETT:  IF I CAN JUST RESPOND BEFORE YOU
7    MAKE YOUR RULING, JUDGE.  I THINK THIS GOES TO THE
8    CREDIBILITY OF THE CASE WHEN YOU HAVE THE PLAINTIFF TELLING
9    A DOCTOR THAT HIS LAWYER TOLD HIM NOT TO WORK.
10             MR. BLASKA:  WELL JUDGE, MY RESPONSE TO THAT WOULD
11   BE, WITHIN THE WORKERS COMPENSATION SYSTEM, LAWYERS ARE VERY
12   MUCH INVOLVED IN WHAT TREATMENT THE PATIENT IS RECEIVING.
13   AND IF THERE IS AN ISSUE WITH THE TREATMENT NOT BEING
14   RENDERED OR SOMETHING ELSE THAT NEEDS TO BE DONE, THE LAWYER
15   DOES GET INVOLVED.  AND TO ME THAT IS A DEAD GIVE-AWAY THAT
16   THIS IS WORKERS COMPENSATION RELATED.
17             MR. MOFFETT:  IT'S ALSO TRUE AT THE TIME, JUDGE,
18   HE HAD A WORKERS COMPENSATION LAWYER AND HIS PERSONAL INJURY
19   LAWYERS, MY ESTEEMED COLLEAGUES.  THERE IS EVIDENCE IN THE
20   CASE THAT PERSONAL INJURY ACTION HAD INITIATED, AND I THINK
21   IT GOES TO CREDIBILITY IF MR. WALKER TELLS HIS DOCTOR THAT
22   HIS LAWYER SAID DON'T GO WORK.
23             THE COURT:  ALL RIGHT.  I WILL DELETE THE SENTENCE
24   "HE TELLS ME -- HE TOLD ME AT THE TIME THAT HE WAS AWAITING
25   SOME SORT OF PAPERWORK FROM HIS EMPLOYER."  I WILL TAKE THAT
```

1   SENTENCE OUT.  AND I AM GOING TO TAKE OUT THE NEXT SENTENCE,

2   "AND I NOTED IN HERE I DON'T KNOW WHAT THIS IS ABOUT."  BUT

3   I AM GOING TO LEAVE IN THE DEPOSITION THE REST OF THE ANSWER

4   TO THIS QUESTION.

5           MR. BLASKA:  YOUR HONOR, IF I AM TO EXPLAIN THAT I

6   HAVE TO REVEAL COLLATERAL SOURCE TO EXPLAIN WHAT THAT MEANS.

7   THAT IS MY ISSUE

8           THE COURT:  HOW DOES IS IT REVEAL A COLLATERAL

9   SOURCE?

10          MR. BLASKA;  WELL, IF MR. MOFFETT USES HIS

11  TESTIMONY, IT IS GOING SUGGEST THAT I OR ONE OF THE MEMBERS

12  OF OUR TEAM TOLD HIM NOT TO GO BACK TO WORK, WHICH IS NOT

13  THE CASE HERE.  THIS IS SOMETHING THAT HIS WORKER

14  COMPENSATION LAWYER TOLD HIM TO DO, OR ALLEGEDLY TOLD HIM TO

15  DO.  IN ORDER FOR ME TO EXPLAIN THAT, I WOULD HAVE TO CALL

16  HIM AND ASK HIM WHY DID YOU DO THIS?  WELL, BECAUSE THERE

17  WAS AN ISSUE AND I COULDN'T GET HIM TO THIS DOCTOR, OR I

18  COULDN'T GET THESE WORK RESTRICTIONS SO I TOLD HIM TO SIT

19  TIGHT.  RIGHT THERE I HAVE INJECTED IT MYSELF BECAUSE I HAVE

20  HAD TO RESPOND TO SOMETHING WITH MY HANDS TIED BEHIND MY

21  BACK OTHERWISE.

22          THE COURT:  MATT, ARE YOU INTENDING TO QUOTE THIS

23  PART OF THE TRANSCRIPT THAT THE LAWYER DID NOT TELL HIM TO

24  RETURN TO WORK IN YOUR ARGUMENT?

25          MR. MOFFETT:  I WILL NOT DO THAT IF THAT DOES

1    SATISFY YOUR HONOR.

2              THE COURT:  ALL RIGHT.  THAT -- I THINK THAT IS A

3    REASONABLE COMPROMISE.

4              MR. BLASKA:  I AM NOT SURE I UNDERSTAND, YOUR

5    HONOR, WHAT THE --

6              THE COURT:  HE IS NOT GOING TO ARGUE TO THE JURY

7    THAT HIS LAWYER WAS TELLING HIM WHETHER OR NOT TO GO BACK TO

8    WORK.  HE IS NOT GOING TO MAKE THAT ARGUMENT.

9              THE COURT:  ANYMORE?

10             MR. BLASKA:  THERE ARE A COUPLE MORE PORTIONS.

11   OKAY, YOUR HONOR, PAGE 102 LINE 23.  "I QUESTIONED HIM ABOUT

12   HOW HIS WORK WAS GOING.  HE TELLS ME HE WAS AWAITING A

13   LETTER FROM HIS COMPANY TO TELL HIM TO RETURN TO WORK.

14   ULTIMATELY HE TELLS ME THE LETTER ARRIVED AND HE RETURNED TO

15   WORK.  HE TELLS ME WHEN HE RETURNED TO WORK HE WAS ONLY ABLE

16   TO WORK FOR ONE HOUR DUE TO SWELLING."  THE FRONT AND BACK

17   END OF THAT I DON'T SEE ANY ISSUE WITH, BUT HE IS TELLING ME

18   HE IS AWAITING A LETTER FROM HIS COMPANY TO TELL HIM TO

19   RETURN TO WORK.  OUTSIDE OF WORKERS COMPENSATION, I DON'T

20   THINK ANYBODY WOULD EVER EXPERIENCE THAT.

21             THE COURT:  I AM NOT SO SURE OF THAT.  I DON'T

22   THINK THE JURY IS GOING TO PICK UP FROM THAT ONE SENTENCE

23   THE FACT THAT HE WAS WAITING A LETTER FROM HIS EMPLOYER,

24   THAT OH THIS MUST BE WORKERS COMPENSATION ISSUES INVOLVED

25   HERE.  I JUST DON'T THINK SO.

1            MR. BLASKA:  OKAY.

2            THE COURT:  NORMALLY I AM UP HERE GIVING JURORS

3    CREDIT.

4            MR. BLASKA:  UNDERSTOOD.  WELL, SIMILAR ON PAGE

5    115, YOUR HONOR, LINE 18.  HE HAD EXPLAINED THERE WAS

6    SPECIAL PAPERWORK THAT HE NEEDED AND HAD NOT RECEIVED BUT IN

7    THIS SITUATION HADN'T TAKEN THE STEP TO CALL THE COMPANY AND

8    SAY WHERE IS THE PAPERWORK.  I THINK THAT IS PRETTY

9    CONFUSING, AND I JUST -- MY ISSUE WITH IT IS IT'S GOING TO

10   PUT THE JURY IN THE POSITION OF TRYING TO CLOSE THE LOOP ON

11   WHAT EXACTLY THAT MEANS IF THEY DO CATCH IT, AND I THINK IS

12   SOMETHING THEY COULD REASONABLY THINK THIS MEANS COMP.

13           THE COURT:  MATT?

14           MR. MOFFETT:  THIS IS ALL IN THE CONTEXT OF THE

15   DOCTOR GIVING TESTIMONY THAT IN HIS MEDICAL OPINION, BASED

16   ON HIS TREATMENT AND DEALINGS WITH MR. WALKER, MR. WALKER

17   WAS NOT TAKING RESPONSIBILITY FOR HIS RECOVERY AND

18   REHABILITATION, AND THIS WAS AN EXPLANATION AS TO ONE

19   EXAMPLE OF THAT.  WHY HAVEN'T YOU GONE BACK TO WORK, SIR?

20   WELL, MY LAWYER TOLD ME NOT TO, OR I AM WAITING FOR

21   PAPERWORK, OR THEY ARE MEAN TO ME, OR THEY WON'T ACCOMMODATE

22   ME.  IT IS JUST ONE EXCUSE AFTER ANOTHER.

23           THE COURT:  I AM INCLINED TO CONCLUDE THAT THE

24   PROBATIVE VALUE OF THIS TESTIMONY OUTWEIGHS ITS PREJUDICIAL

25   EFFECT, AND THEREFORE I AM NOT GOING TO STRIKE THE TESTIMONY

1   OF PAGE 115.

2            MR. BLASKA:  OKAY.  THANK YOU, YOUR HONOR.

3            THE COURT:  ANYMORE?

4            MR. BLASKA:  JUST A FEW.  THERE IS ONE ISSUE THAT

5   I DID WANT TO BRING UP THAT I THINK IS PROBABLY GOING TO BE

6   MORE IMPORTANT THAN WHAT WE ARE DISCUSSING RIGHT NOW.  AS

7   PART OF THIS DEPOSITION, AN EXHIBIT WAS OFFERED TO

8   DR. PORTER, AND IT WAS A QUESTIONNAIRE FROM THE WORKERS

9   COMPENSATION ADJUSTER ASKING DR. PORTER ABOUT VARIOUS

10  ASPECTS OF RELATEDNESS OF THE TREATMENT, WHETHER OR NOT THE

11  DIAGNOSIS OFFERED BY THE DOCTOR IS ACCURATE AND SO ON.  AND

12  THIS IS SOMETHING THAT OPPOSING COUNSEL QUESTIONED

13  DR. PORTER ON FOR I BELIEVE ABOUT FIVE OR SIX PAGES, AND

14  THEN ASKED DR. PORTER LATER WHETHER OR NOT HE WOULD HAVE THE

15  ABILITY AND WOULD BE ABLE TO RENDER AN OPINION AS TO

16  MR. WALKER'S DISABILITY, IF ANY, TODAY, BECAUSE HE HADN'T

17  SEEN MR. WALKER IN NEARLY FOUR YEARS AT THE TIME OF THE

18  DEPOSITION.

19            SO IN RESPONSE TO THAT, I ASKED DR. PORTER WHETHER

20  OR NOT MR. MOFFETT HAD OFFERED OR ASKED HIM TO PERFORM AN

21  IME AT ANY POINT, TO WHICH HE STATED NO.  AND THEN

22  MR. MOFFETT ON REDIRECT ASKED OR SUGGESTED -- ACTUALLY,

23  EXCUSE ME, I BELIEVE IN HIS OBJECTION HE SUGGESTED, WELL, IF

24  YOU WANT HIM TO COME IN NOW, WE WILL AGREE IT TO, WE WILL

25  PAY FOR IT.  AND SIMPLY WHAT I WAS DOING IS JUST MAKING SURE

1   THAT IT WAS CLEAR THAT IF HE IS GOING TO SUGGEST MR. WALKER,

2   FOR WHATEVER REASON, DIDN'T COME BACK IN, YOU KNOW, THAT IT

3   IS CLEAR THAT HE HAD EQUAL OPPORTUNITY TO HAVE DR. PORTER

4   EVALUATE MR. WALKER.  SO THAT LED TO A LETTER THAT WAS SENT

5   TO US FOLLOWING THAT DEPOSITION ASKING US WHETHER WE WOULD

6   AGREE TO HAVE OUR CLIENT SUBMIT TO AN IME OUTSIDE OF THE

7   DISCOVERY PERIOD SEVERAL WEEKS BEFORE TRIAL, PAID FOR BY THE

8   DEFENSE, FOR DR. PORTER TO GIVE SUCH EVALUATION.  AND SO I

9   ASKED JASON YESTERDAY IF WE COULD KEEP ALL OF THAT TESTIMONY

10  OUT.  HE WASN'T ABLE TO AGREE WITH ME ON THAT, SAID HE

11  WANTED TO TALK TO YOU ABOUT IT.  BUT I THOUGHT, WHETHER OR

12  NOT MR. WALKER OR DR. PORTER IS ABLE TO EVALUATE HIM TODAY,

13  IF THAT IS THE QUESTION THAT IS GOING TO STAY IN, I THINK IT

14  IS APPROPRIATE THAT I ASK HIM OR POINT OUT TO THE JURY,

15  WELL, THE DEFENDANT HAD THE OPPORTUNITY TO HAVE HIM EVALUATE

16  MR. WALKER DURING DISCOVER AND CHOSE NOT TO.  AND THEN I

17  THINK IN RESPONSE, THAT IS WHEN I GOT THIS LETTER POINTING

18  OUT, WELL, WILL YOU AGREE TO SEND HIM NOW?  TWO WEEKS BEFORE

19  TRIAL.  SO THAT I AM PREVENTED FROM MAKING THAT ARGUMENT, SO

20  THIS SIDE SHOW COMES IN TO THE JURY.  AND I DON'T THINK IT

21  IS APPROPRIATE, BUT WE WEREN'T ABLE TO REACH AN AGREEMENT ON

22  IT YESTERDAY, AND THAT IS SOMETHING THAT I FELT WAS VERY

23  IMPORTANT TO BRING UP TODAY.

24          THE COURT:  WHAT DO YOU MEAN A SIDE SHOW WOULD

25  COME IN?  WHAT SIDE SHOW?

1          MR. BLASKA:  WELL, THE DISTRACTION TO ME OF

2     WHETHER MR. WALKER -- IF DR. PORTER CAN EVALUATE HIM,

3     MR. MOFFETT IS SUGGESTING MR. WALKER DIDN'T GO BACK TO SEE

4     HIM, MY RESPONSE TO THAT IS, WELL, I WOULD TELL THE JURY, IT

5     IS IMPORTANT TO NOTE THAT THE DEFENDANT HAD AN OPPORTUNITY

6     TO SEND HIM THERE FOR AN IME.  BUT NOW THERE IS THIS LETTER

7     TO DEAL WITH THAT DOESN'T EXPLAIN WHAT THE RULES OF

8     DISCOVERY ARE AND WHAT THE RULES ARE ABOUT SENDING YOUR

9     CLIENT IN FOR AN IME DURING THE DISCOVERY PERIOD.  IT JUST

10    SIMPLY STATES WE OFFERED TO SEND YOUR CLIENT THERE AND PAY

11    FOR IT AND HAVE AN IME OUTSIDE OF DISCOVERY, AND YOU GUYS

12    ARE SAYING NO.  SO TO ME IT IS PRETTY CONFUSING.  AND THE

13    WAY IT, IN MY MINE, WILL PLAY OUT IN FRONT OF THE JURY IS

14    GOING TO BE VERY DISTRACTING.  I DON'T THINK IT IS GOING TO

15    BE VERY VALUABLE.  BUT SOMETHING, YOU KNOW, AGAIN, THAT IS A

16    LITTLE ODD, AND THAT IS WHY I WANTED TO BRING IT TO YOUR

17    ATTENTION, YOUR HONOR.

18          THE COURT:  WHAT IS THE DATE OF THAT LETTER?

19          MR. BLASKA:  MARCH 12, 2015.

20          THE COURT:  AND YOU MADE YOUR OFFER TO MATT TO

21    TAKE THE DEPOSITION, HAVE DR. PORTER CONDUCT AN IME DURING

22    OR AT THE CONCLUSION OF DR. PORTER'S DEPOSITION ON FEBRUARY

23    24TH?

24          MR. BLASKA:  NO, YOUR HONOR.  I POINTED OUT, AND I

25    ASKED DR. PORTER WHETHER OR NOT WHETHER OR NOT HE HAD EVER

1    BEEN ASKED TO PERFORM AN IME AT ANY POINT.

2              THE COURT:  THIS IS DURING THE DEPOSITION?

3              MR. BLASKA:  YES, SIR.  AND HE STATED:  "NO, I

4    DIDN'T KNOW THAT."  I SAID, "ARE YOU AWARE THAT THE

5    DEFENDANTS COULD HAVE ASKED YOU TO DO THIS?"  "I DIDN'T KNOW

6    THAT."  I AM SIMPLY POINTING OUT, AND IF THIS ARGUMENT CAME

7    IN, AND IF THERE IS SOMETHING THAT THE JURY HEARD, THAT IS

8    NOT OUR CLIENT'S FAULT, AND IT'S NOT AS IF THERE WAS NO WAY

9    POSSIBLY FOR THE DEFENDANTS TO HAVE DR. PORTER EVALUATE HIM

10   IF THEY WANTED TO DO THAT.  THEY HAD THAT RIGHT DURING THE

11   DISCOVERY PERIOD, AND EXERCISED THE OPTION TO NOT TAKE

12   ADVANTAGE OF IT.  AND THEN AT THE DEPOSITION THIS CAME UP, I

13   ASKED DR. PORTER IF THAT WAS SOMETHING THAT WAS EVER

14   CONTEMPLATED, AND HE SAID NO.  AND THEN A RESPONSE TO THAT,

15   A FEW WEEKS AFTER THE DEPOSITION, I GOT THIS LETTER STATING

16   WELL, HEY, WILL YOU AGREE TO SEND MR. WALKER FOR AN IME NOW?

17   AND WE WEREN'T WILLING TO AGREE TO THAT.

18             THE COURT:  WHY NOT?

19             MR. BLASKA:  THE PERIOD OF -- THE DISCOVERY

20   PERIOD, AND I AM NOT SURE WHAT DR. PORTER WOULD SAY, IT

21   WOULD POSSIBLY CAUSE US POTENTIALLY HAVE TO RIP UP AND

22   REBUILD OUR CASE.  AND HONESTLY, I DON'T PARTICULARLY THINK

23   DR. PORTER'S TESTIMONY -- YOU KNOW, HE IS A COMP DOCTOR.  I

24   DON'T TRUST HIM.  OUR CLIENT DOESN'T TRUST HIM, SIMPLY PUT.

25   SO --

1          THE COURT:  ALL RIGHT.  MATT?

2          MR. MOFFETT:  OKAY.  THE CONTEXT OF THIS IS THAT

3   THIS IS A TREATING DOCTOR.  DR. SLAPPEY WAS A TREATING

4   ORTHOPEDIST, DR. PORTER WAS THE TREATING PAIN MANAGEMENT

5   ANESTHESIOLOGY DOCTOR.  BOTH BOARD CERTIFIED.  THEY DID NOT

6   WANT TO PRESENT THEIR TESTIMONY AND EVIDENCE TO THE JURY.  I

7   WANTED TO.  THAT IS WHY I WENT OUT AND TOOK THEIR

8   EVIDENTIARY DEPOSITIONS ON DIRECT.  THEY CROSSED THE

9   TREATING PHYSICIAN OF THEIR OWN CLIENT.

10          IN DR. PORTER'S DEPOSITION, HE LAST SEES THE

11   PLAINTIFF IN JUNE OF 2011.  HE TELLS HIM HE CAN GO BACK TO

12   WORK, AND HE TELLS HIM TO COME ON BACK AND SEE DR. PORTER,

13   THE DOCTOR, I THINK IN FOUR TO SIX WEEKS.  MR. WALKER NEVER

14   GOES BACK.  AND THAT WAS JUST A QUESTION, "DID HE EVER COME

15   BACK THE SEE YOU?"  "NO."  "WHAT DID YOU RECOMMEND?"  "GO ON

16   BACK TO WORK, CONTINUE DOING WHAT I HAVE TOLD YOU TO DO. USE

17   YOUR ELECTRICAL SOCK.  COME BACK TO SEE ME IN FOUR TO SIX

18   WEEKS.  HE DOESN'T COME BACK."  THAT IS IT.  MR. BLASKA THEN

19   TURNS AROUND ON PAGE, I THINK IT STARTS ON PAGE 151 LINE 20

20   AND CONTINUES ON 152, AND MAKES A SUGGESTION THAT DEFENSE

21   COUNSEL HAD THE OPPORTUNITY TO REQUEST SUCH AN EVALUATION

22   AFTER SAYING SOMETHING ABOUT AN EVALUATION.  THAT'S WHAT

23   PROMPTED ME TO SEND HIM THAT LETTER.  THAT'S THE CONTEXT OF

24   THIS.

25          AND FIRST OF ALL, YOU KNOW, I CAN'T MAKE SOMEBODY

1    GO SEE A DOCTOR.  I MEAN, I CAN FILE A MOTION WITH YOUR

2    HONOR SAYING WE WOULD LIKE FOR THE TREATING DOCTOR TO SEE

3    HIS OWN PATIENT, BUT THIS IS NOT MY EXPERT.  AND I HAVE THE

4    EVIDENCE I NEED.  AND THE QUESTION WAS, DID HE EVER COME

5    BACK THE SEE YOU?  AND THE ANSWER IS NO, HE DIDN'T.  SO I

6    THINK IT IS IMPROPER TO MAKE A SUGGESTION AND ARGUMENT THAT

7    SOMEHOW I HAD THE RIGHT TO INSIST THAT MR. WALKER COME AND

8    SEE HIS TREATING PHYSICIAN.  BUT IF YOUR HONOR IS GOING TO

9    ALLOW THEM TO PUT THAT IN FRONT OF THE JURY I'D LIKE TO BE

10   ABLE THE SAY, OKAY, WE SENT YOU A LETTER AND SAY, NOT ONLY

11   DO WE ASK, WE WILL PAY FOR IT.  HERE'S FIVE OR SIX DAYS

12   THAT DR. PORTER IS AVAILABLE.  HE IS BOARD CERTIFIED, UNLIKE

13   YOUR EXPERT, DR. EMPTING, WHY DON'T YOU SEND YOUR CLIENT

14   BACK AND LET YOUR CLIENT BE EVALUATED BY A COMPETENT

15   PROFESSIONAL MEDICAL PERSON.  THAT IS THE CONTEXT.

16           MR. BLASKA:  YOUR HONOR, IT'S NOT ALL OF THE

17   CONTEXT.  TURN YOUR ATTENTION TO, IF YOU WOULDN'T MIND

18   TAKING A LOOK AT PAGE 119.  THIS IS HOW THIS STARTS.  WE ARE

19   LOOKING AT, STARTING WITH LINE 14 ON PAGE 119, YOUR HONOR,

20   MR. MOFFETT ASKED, "IF HE CAME IN TO YOU NOW, FOR EXAMPLE,

21   IF HE CAME IN NEXT WEEK OR EVEN NEXT MONTH BEFORE THE TRIAL

22   OF THIS CASE, YOU COULD TALK WITH HIM, EXAMINE HIM ASSESS

23   THIS CRITERIA, OBJECTIVE CRITERIA, ABOUT COMPLEX REGIONAL

24   PAIN SYNDROME; RIGHT?"  "YES."  "AND YOU CAN GIVE AN OPINION

25   AS TO WHETHER HE HAS IT OR DOESN'T HAVE IT, RIGHT?  WHETHER

1    HE MEETS THE CRITERIA?  YES OR NO?  AND YOU CAN GIVE AN

2    OPINION BASED ON WHETHER YOUR MEDICAL OPINION OF HIS

3    PHYSICAL CONDITION IS SUCH THAT HE CAN WORK FOR A LIVING?"

4    "I SHOULD BE ABLE TO DO THAT, YES."

5             SO YOUR HONOR, THAT IS WHY I RESPONDED THE WAY

6    THAT I DID, BECAUSE HE ASKING HIM -- WELL, HE IS ESSENTIALLY

7    SUGGESTING TO THE JURY THAT JOCK IS UNWILLING TO GO, AND

8    THAT THIS IS SOMETHING THAT, I MEAN, YOU KNOW, THIS GUY IS

9    THE END ALL BE ALL, HE KNOWS EVERYTHING AND, YOU KNOW, WHAT

10   IS THE REASON WHY JOCK DIDN'T GO.  FOR ME TO RESPOND TO

11   THAT, YOU KNOW, THE APPROPRIATE VEHICLE FOR HIM TO SEND JOCK

12   WALKER TO DR. PORTER AGAIN WOULD BE THROUGH AN IME WITHIN

13   THE DISCOVERY PERIOD.

14             PART OF THE REASON, AND ONE THING I WANT TO POINT

15   OUT AS TO WHY I DON'T TRUST AND NOR DOES JOCK WALKER TRUST

16   DR. PORTER, IS DR. PORTER IN HIS RECORDS STATES THAT JOCK

17   WAS MAD ANOTHER HIM, WOULDN'T LOOK HIM IN THE EYE, BUT THEN

18   WHEN I ASK HIM, "DID YOU ASK HIM IF HE WAS MAD AT YOU?"

19   "WELL NO."  AND THERE WAS MORE OF AN INTERACTION THAN THAT,

20   BUT THAT IS NOT THE KIND OF DOCTOR, YOUR HONOR, THAT I AM

21   GOING TO VOLUNTARILY SUBMIT MY CLIENT FOR AN IME TO.  IF HE

22   IS SITTING THERE AND HE'S WORRIED ABOUT WHETHER THE CLIENT

23   OR THE PATIENT IS MAD AT HIM, AND THEN DOESN'T HAVE THE

24   WHEREWITHAL TO ASK HIM, TO ME, THAT IS A PROBLEM.  AND THAT

25   WAS PART OF HIS TESTIMONY THAT CAME OUT ON DIRECT EXAM.  SO

1  WHEN I SAID SAY WE DON'T TRUST HIM, THAT IS THE REASON WHY,

2  THE SAME REASON MY CLIENT DOESN'T.  AND SO THERE IS NO BASIS

3  FOR US TO VOLUNTARILY SEND MR. WALKER IN TO A DOCTOR THAT

4  THINKS THAT OUR CLIENT DOESN'T LIKE HIM AND IS WILLING TO

5  PUT THAT IN HIS MEDICAL RECORDS.  THIS CAME UP DURING

6  DIRECT, I RESPONDED TO IT, AND THEN A RESPONSE TO MY

7  RESPONSE, I GOT THE LETTER, AND HERE WE ARE.

8          THE COURT:  SO WHAT EXACTLY DO YOU WANT THE COURT

9  TO DO?

10          MR. BLASKA:  WELL, I PROPOSED TO JASON YESTERDAY

11  OF TAKING IT OUT, TAKING ALL OF THIS OUT.  REMOVING IT.

12  REMOVING THE QUESTION ABOUT IF HE CAME IN HERE AND SAW YOU

13  TODAY OR SAW YOU IN THE NEXT FEW WEEKS, TAKE THAT OUT, TAKE

14  OUT MY RESPONSE TO IT.  AND THEN THE LETTER IS A NONISSUE,

15  BUT AGAIN, WE COULDN'T COME TO AN AGREEMENT ON THAT, BUT

16  THAT WOULD BE MY PROPOSAL.  I DON'T THINK IT HAS ANY VALUE

17  IN THE CASE.  I THINK IT IS GOING TO BE A DISTRACTION.  I

18  THINK IT IS PREJUDICIAL, WAY MORE PREJUDICIAL THAN

19  PROBATIVE, AND WOULD CAUSE US TO HAVE TO EXPLAIN THE RULES

20  OF HOW AN IME WOULD BE REQUESTED AND UNDERTAKEN DURING

21  DISCOVERY, WHICH IT WASN'T IN THIS CASE.

22          THE COURT:  I MEAN, IT IS SIGNIFICANT TO THE COURT

23  THAT THE DEFENDANTS DID NOT SEEK AND IME DURING THE

24  DISCOVERY PERIOD.

25          MS. BLASKA:  SORRY, YOUR HONOR?

1            THE COURT:  IT IS SIGNIFICANT TO THE COURT THAT

2     THE DEFENDANTS DIDN'T SEEK AND IME DURING THE DISCOVERY

3     PERIOD.

4            MR. BLASKA:  I AGREE.

5            THE COURT:  MATT, WHAT DO YOU THINK OF THIS, OF

6     THIS PROPOSAL?  IT IS STARTING TO SOUND PRETTY GOOD TO ME.

7            MR. MOFFETT:  LET ME TELL YOU WHY I RESPECTFULLY

8     DISAGREE WITH THIS.  FIRST OF ALL, IT BEGINS ON PAGE 118,

9     NOT 119, WHERE MR. BLASKA MAKES AN OBJECTION, I DON'T KNOW

10    IF IT IS GOING TO BE EDITED OUT OR NOT IN FRONT OF THE JURY,

11    AND BASICALLY CHALLENGES DR. PORTER BECAUSE HE HADN'T SEEN

12    THE PATIENT IN FOUR YEARS.  THAT IS ON LINE 7 OF PAGE 118.

13           THE COURT:  THAT OBJECTION NEEDS TO GO OUT, AND SO

14    DOES YOUR RESPONSE TO HIS OBJECTION ON LINE 17.

15           MR. MOFFETT:  YEAH, I AM JUST NOT SURE WHAT WE ARE

16    TALKING ABOUT HERE AS FAR AS WHAT COMES OUT, BECAUSE THE

17    EVIDENCE THAT WILL COME INTO THE CASE IS THAT THIS LAW FIRM

18    RETAINED THIS DR. EMPTING IN 2014 AND SENT THEIR CLIENT TO

19    HIM.  THAT IS ON A DOCUMENT IN THE MEDICAL RECORDS OF

20    DR. EMPTING AFTER HE HADN'T SEEN THE INDIVIDUAL IN TWO YEARS

21    AFTER A PRIOR LAWYER SENT MR. WALKER TO DR. EMPTING.  AND I

22    THINK IN CONTEXT, THE JURY HAS TO UNDERSTAND THAT MR. WALKER

23    CHOSE NOT TO RETURN TO HIS TREATING DOCTOR AND INSTEAD WENT

24    TO WHERE HIS LAWYER SENT HIM.  AND I THINK THAT IS THE

25    CONTEXT OF WHAT I AM ASKING HERE.  HE DIDN'T COME BACK TO

1    SEE YOU.  HAD HE COME BACK TO SEE YOU, COULD YOU HAVE

2    CONTINUED TO EVALUATE HIM, AND THIS DOCTOR SAYS SURE.  THEN

3    MR. BLASKA CHALLENGES ME BECAUSE "YOU NEVER ASKED THAT THE

4    TREATING DOCTOR SEE HIM."  I DON'T HAVE TO.  THIS IS THE

5    MAN'S TREATING DOCTOR.  IF HE DOESN'T WANT TO GO BACK TO

6    HIM, I THINK THE JURY SHOULD HEAR THAT.  THAT IS CREDIBILITY

7    OF THE CASE THAT THEY ARE PRESENTING.  INSTEAD HE GOES TO A

8    DOCTOR THAT LAWYERS RETAIN AND AGREE TO PAY.  THAT IS IN

9    EVIDENCE IN THE MEDICAL RECORDS.

10          MR. BLASKA:  JUDGE, I DON'T KNOW IF YOU WOULD LIKE

11   FOR ME TO RESPOND TO THE LAST PART OF THAT.  I WILL IF YOU

12   WOULD LIKE FOR ME TO.

13          THE COURT:  GO AHEAD.

14          MR. BLASKA:  SO AGAIN, I THINK I HAVE STATED MY

15   POSITION CLEARLY WITH RESPECT TO THE IME NOT BEING ASKING

16   FOR WITHIN DISCOVERY.  SO TO ADDRESS WHAT HE'S IS REFERRING

17   TO WITH DR. EMPTING AND US PAYING DR. EMPTING TO GIVE AN

18   OPINION, MR. WALKER HAD NOT SEEN DR. EMPTING I BELIEVE SINCE

19   2012, AND WE ARE GETTING THROUGH THE END OF DISCOVERY AND I

20   WANTED TO ASK DR. EMPTING WHAT HIS OPINION MEANT.  I AM NOT

21   A DOCTOR.  PAIN MEDICINE IS SOMETHING, TO ME, IS NOT THE

22   EASIEST TO UNDERSTAND.  SO I CALLED HIS OFFICE AND ASKED

23   WHETHER OR NOT I COULD SIT DOWN WITH HIM AND TALK TO HIM

24   ABOUT HIS OPINIONS BECAUSE I DIDN'T REALLY UNDERSTAND THEM.

25   AND IN RESPONSE, HE TOLD HIS ADMINS, I WILL BE WILLING TO

1    SIT DOWN WITH MR. BLASKA IF I CAN SEE MR. WALKER BECAUSE I

2    HADN'T SEEN HIM IN TWO YEARS, AND I SAID OKAY.  THAT IS

3    FINE.  I NEED TO KNOW WHAT YOU THINK.  I NEED TO KNOW WHAT

4    YOU KNOW.  AND THAT IS WHAT I DID.

5         AND SO HE SAW MR. WALKER, I CAME IN AND TALKED TO

6    HIM ABOUT HIS OPINIONS.  I DIDN'T PAY HIM FOR TESTIMONY.  I

7    DIDN'T DO ANYTHING LIKE.  I DIDN'T RETAIN HIM.  IT WAS

8    SIMPLY A CONDITION THAT HE REQUIRED FOR ME TO DO SO THAT HE

9    FELT COMFORTABLE TALKING TO ME ABOUT JOCK WALKER AND HIS

10   CONDITION.  AFTER THAT, JOCK WALKER HAS BEEN A SELF PAY FROM

11   THAT POINT ON.  I DON'T THINK THERE IS ANYTHING IMPROPER

12   ABOUT ME AS A LAWYER, FROM A DIAGNOSTIC ANGLE, ASKING A

13   DOCTOR WHAT IT IS THAT YOUR OPINION IS GOING TO BE, OR WHAT

14   DOES THIS MEAN.  AND SO I WAS GOING TO SEEK CLARIFICATION

15   FROM HIM.  AND I'D ARGUE IT IS STRATEGY, BUT IT HAS COME OUT

16   IN THE CASE.  AND NOW I AM BEING ACCUSED OF UNDERHANDEDLY

17   PAYING DOCTORS TO GIVE OPINIONS THAT I HAVE PAID FOR IN THE

18   CASE, WHICH IS HARDLY TRUE AT ALL.

19        BUT, YOU KNOW, PART OF THE REASON WHY I AM

20   BRINGING THIS TO THE COURT'S ATTENTION IS I THINK THIS IS A

21   HUGE DISTRACTION.  AND IF IT IS SOMETHING THAT IS GOING TO

22   PLAY ITSELF OUT IN FRONT OF THE JURY, NOT NECESSARILY THE

23   DOCTOR EMPTING ISSUE, I CAN EXPLAIN THAT THROUGH HIM ON

24   DIRECT.  BUT THIS ISSUE TO ME IS VERY PROBLEMATIC.  AND I

25   THINK THAT IN ORDER FOR ME TO EXPLORE IT I HAVE TO EXPLAIN

1    TO THE JURY WHAT THE RULES OF DISCOVERY ARE AND WHY THEY SAT

2    ON THEIR HANDS AND DIDN'T ASK FOR MR. WALKER TO GO SEE

3    DR. PORTER, AND THEN AT THE 11TH HOUR HE COULD HAVE BUT HE

4    CHOSE NOT TO.  I DON'T THINK THAT IS FAIR.  I THINK THAT IS

5    PUTTING US IN A VERY DIFFICULT POSITION.

6                THE COURT:  WHY IS THAT SO DIFFICULT FOR YOU TO

7    DO?

8                MR. BLASKA:  IT IS ANOTHER ANGLE THAT WE ARE GOING

9    TO HAVE TO COVER THROUGH TESTIMONY.  WE ARE GOING TO HAVE TO

10   DEAL WITH IT IN OPENING, SOMETHING WE WILL PROBABLY HAVE TO

11   ADDRESS THEN.  SOMETHING THAT WE WILL NEED TO ADDRESS IN

12   CLOSING.  IT IS SOMETHING THAT WE WILL LIKELY NEED TO

13   ADDRESS IN SOME WAY SHAPE OR FORM WITH MR. WALKER.  AND I

14   THINK -- I DON'T SEE THE VALUE OF THAT.  I THINK IT IS MORE

15   HARMFUL TO OUR CASE THAN IT IS PROBATIVE FOR THE JURY.  AND

16   YOUR HONOR, I WOULD -- GETTING BACK TO MY ORIGINAL POINT,

17   HAD THE DEFENSE REQUESTED THE IME WITHIN THE DISCOVER

18   PERIOD, WE ABSOLUTELY WOULD HAVE AGREED TO IT, BUT HERE IT

19   IS AFTER THE FACT LATE, AND WE ARE DEALING WITH IT ON THE

20   BACK END.  AND SO THIS ISSUE WASN'T CREATED BY US, IT IS

21   CREATED BY THE DEFENSE BRINGING IT UP NOW, WHEN DISCOVERY

22   CLOSED IN AUGUST OF LAST YEAR.  SO I JUST DON'T SEE HOW IT

23   IS FAIR THAT WE HAVE TO DEAL WITH IT NOW WHEN THEY HAD THE

24   OPPORTUNITY TO TAKE CARE OF IT THEN, IF THAT MAKES SENSE.

25                MR. MOFFETT:  I AM JUST NOT SURE WHAT WE ARE

1    REALLY ARGUING HERE.  THE IME IS NOT AT ISSUE.  THAT IS NOT

2    RELEVANT UNLESS MR. BLASKA WANTS THE ATTACK DR. PORTER FOR

3    NOT HAVING SEEN MR. WALKER.  THAT WAS MR. WALKER'S DECISION

4    NOT TO GO BACK TO HIS TREATING DOCTOR.  THAT'S IT.  IF HE

5    HAD GONE BACK, I JUST ESTABLISHED THE DOCTOR COULD HAVE

6    CONTINUED TO TREAT HIM.  THAT'S IT.  AND IF YOU LOOK, OUR

7    EXHIBIT 89 IS THE EVIDENCE THAT MR. BLASKA HIRED DR. EMPTING

8    AND AGREED TO PAY HIM, BECAUSE HE SIGNED A DOCUMENT RIGHT

9    HERE SAYING HE WOULD PAY HIM.  THAT IS IN OUR EXHIBIT LIST.

10           MR. BLASKA:  YOUR HONOR, I HAVE STATED IN MY PLACE

11   THAT I TOLD YOU THE TRUTH AS FAR AS WHY THAT CAME UP.  AND I

12   WILL ASK THE DOCTOR ON THE STAND WHAT THAT MEANS, BUT AGAIN,

13   THIS ISSUE TO ME, "AND IF HE CAME IN TO YOU NOW, FOR EXAMPLE

14   IF HE CAME IN NEXT WEEK OR THE NEXT WEEK, YOU COULD TALK

15   WITH HIM AND EXAMINE HIM, ASSESS CRITERIA.  YOU CAN GIVE AN

16   OPINION AS TO WHETHER HE HAS RSD, YOU COULD GIVE AN OPINION

17   AS TO WHETHER HE COULD WORK."  THAT IS ALL ISSUES THAT HE

18   COULD HAVE TAKEN CARE OF.  WHEN I SAY "HE," I MEAN DEFENSE

19   COUNSEL.  OR MR. MOFFETT COULD HAVE TAKEN CARE OF IT DURING

20   DISCOVERY.  I JUST THINK IT IS LATE, AND I THINK IT IS GOING

21   TO FORCE US TO HAVE TO DEAL WITH THE THINGS THAT I MENTIONED

22   BEFORE, YOUR HONOR, AND THAT IS EXPLAINING THROUGH THE CASE

23   THIS ISSUE, AND I JUST DON'T BELIEVE THERE IS ANY PLACE FOR

24   IT IN THE CASE.

25           THE COURT:  ALL RIGHT.  I AM NOT SATISFIED THAT

1   THE PLAINTIFF HAS CARRIED -- PLAINTIFFS HAVE CARRIED THEIR

2   BURDEN SHOWING ME THAT CERTAIN EVIDENCE SHOULD BE EXCLUDED.

3   I AM GOING TO RESERVE RULING ON THIS UNTIL THE TRIAL.

4           MR. BLASKA:  THANK YOU, YOUR HONOR.

5           MR. MOFFETT:  I DON'T THINK THERE IS ANYTHING ELSE

6   WITH DR. PORTER, JUDGE.  THERE WERE A FEW MORE WITH

7   DR. SLAPPEY.

8           MR. BLASKA:  THE ONLY OTHER ISSUE WITH DR. PORTER,

9   JUDGE, IS EXHIBIT 3, WHICH IS THE LETTER FROM THE WORKERS

10  COMPENSATION CASE MANAGER TO DR. PORTER.  SHE IS ASKING HIM

11  WHETHER OR NOT HE AGREES WITH DR. EMPTING'S IME, WHICH WAS

12  CONDUCTED ON MARCH 3RD OF 2011.

13          MR. MOFFETT:  WE ARE NOT SEEKING TO ADMIT THAT.

14          MR. BLASKA:  I UNDERSTAND THAT.

15          MR. HERGENROETHER:  JUST FOR CLARIFICATION,

16  DR. PORTER WAS ASKED TO ANSWER SOME QUESTIONS FROM ONE OF

17  THE WORKERS COMP ATTORNEYS.  HE DID SO DURING THE

18  DEPOSITION.  MR. MOFFETT ASKED QUESTIONS.  HE SELF-REDACTED

19  OUT ANYTHING THAT WOULD REFERENCE WORKERS COMP AND JUST

20  SAID, YOU KNOW, YOU WERE ASKED THIS QUESTION ABOUT WHETHER

21  SOME TOLAMINE STUDY WOULD APPROPRIATE FOR MR. WALKER OR NOT.

22  WE WERE NOT GOING TO SEEK TO INTRODUCE THE WORKERS' COMP

23  DOCUMENT.  WE WILL GO STRICTLY WITH DR. PORTER'S ANSWERS TO

24  THE QUESTIONS AS THEY APPEAR IN HIS DEPOSITION.  I THINK

25  THERE IS NO PROBLEM WITH THAT, BUT COUNSEL CAN TELL ME IF I

1    AM WRONG.

2            MR. BLASKA:  THAT IS CORRECT.  I JUST WANTED TO

3    MAKE SURE THAT THAT ISSUE WAS FLESHED OUT, BECAUSE WE HAD A

4    FEW THAT WE NEEDED TO COVER.

5            THE COURT:  IT IS SO ORDERED.

6            MR. HERGENROETHER:  ARE THERE ANY OTHER

7    OBJECTIONS?

8            MR. BLASKA:  ONE OTHER ISSUE, YOUR HONOR, THAT

9    JASON AND I DISCUSSED YESTERDAY WITH RESPECT TO

10   DR. SLAPPEY'S DEPOSITION, AND THAT IS THERE IS A PORTION OF

11   THAT DEPOSITION WHERE THE CREDIBILITY OF DR. EMPTING IS

12   DISCUSSED, OR AT LEAST HIS REPRESENTATION WITHIN THE

13   COMMUNITY, AS IS JOCK WALKER'S.

14           NOW AT THE TIME OF THIS DEPOSITION, WE ARE

15   PRETRIAL, THESE ISSUES HADN'T BEEN INJECTED YET, HADN'T COME

16   UP.  I EXPECT, BASED UPON THE DISCOVERY DEPOSITION OF

17   DR. EMPTING, THAT THE DEFENSE IS GOING TO HAVE SEVERAL

18   ISSUES WITH QUALIFICATIONS AND THE REPUTATION OF

19   DR. EMPTING.  DR. PORTER ALSO BROUGHT IT UP IN HIS

20   DEPOSITION.  AND SO THERE WERE SOME EXCERPTS FROM

21   DR. SLAPPEY'S DEPOSITION THAT EXPLAINED TO JASON, IF THOSE

22   ISSUES COME INTO THE CASE, WHICH I EXPECT THAT THEY WILL,

23   THE OPINION THAT DR. SLAPPEY GIVES THAT DR. EMPTING IS A

24   REPUTABLE NEUROLOGIST THAT HE WOULD RELY UPON IN THE FIELD

25   AND THAT HE HAS A GOOD REPUTATION, I WOULD ASK THAT THAT

1   REMAINS IN THE DEPOSITION ITSELF.  IF THE ISSUES DON'T COME

2   UP, I HAVE NO PROBLEM WITH IT BEING REDACTED.  THE SAME

3   WOULD GO FOR MR. WALKER.

4           THE COURT:  HOW DOES THAT SOUND?

5           MR. HERGENROETHER:  YOUR HONOR, I THINK CONTEXT IS

6   IMPORTANT HERE.  ONCE AGAIN, AT DR. SLAPPEY'S DEPOSITION, WE

7   WERE ON DIRECT, THE PLAINTIFFS WERE ON CROSS.  DURING OUR

8   DIRECT WE DID NOT ASK ANY QUESTIONS THAT GO TO THE

9   CREDIBILITY OR ATTEMPT TO IMPEACH THE CREDIBILITY OF EITHER

10  DR. EMPTING OR MR. WALKER.  ON CROSS, THE PLAINTIFFS

11  ATTEMPTED TO BOLSTER THE CREDIBILITY OF BOTH MR. WALKER AND

12  OF DR. EMPTING.  WE THINK THOSE QUESTIONS, REGARDLESS,

13  BECAUSE THEY ARE OUTSIDE THE SCOPE OF OUR DIRECT, WOULD BE

14  INAPPROPRIATE.  I CAN GO THROUGH THE SPECIFIC QUESTIONS AND

15  DEMONSTRATE, EVEN IF THE COURT DISAGREES WITH ME THAT THEY

16  ARE OUTSIDE OF THE SCOPE OF THE DIRECT, THAT THEY ARE ALSO

17  IMPROPER, EVEN IF THERE WAS SOME SORT OF DIRECT TESTIMONY

18  THAT WOULD ALLOW FOR THIS BOLSTERING TO BE GIVEN.  IT IS

19  JUST IMPROPER.  BUT IT IS CERTAINLY OUTSIDE THE SCOPE OF OUR

20  DIRECT.

21          THE COURT:  WHAT IS THE ANSWER TO THAT?

22          MR. BLASKA:  WELL DR. SLAPPEY REFERRED, OR IN HIS

23  NOTES IT WAS NOTED THAT HE REFERRED MR. WALKER TO GO SEE

24  DR. EMPTING, AND HE REFERRED HIM BECAUSE HE WASN'T FAMILIAR

25  WITH HOW TO HANDLE RSD.  HE SUSPECTED THAT JOCK WALKER HAD

1    RSD.  SO HE SENT HIM TO DR. EMPTING TO MAKE THAT

2    DETERMINATION.  SO I THINK THAT WAS BROUGHT UP IN THE

3    DIRECT.  WAS IT BROUGHT UP WHETHER OR NOT DR. EMPTING IS A

4    GOOD OR BAD DOCTOR?  NO.  BUT I BELIEVE THAT THAT ISSUE CAME

5    UP, AT LEAST THROUGH THE FACT THAT DR. SLAPPEY SENT HIM

6    THERE BECAUSE HE DIDN'T KNOW WHAT TO DO, AND HE FELT THAT

7    DR. EMPTING DID.  AND SO TO ME, THAT IS HOW THAT COMES IN,

8    THAT IS HOW THAT WAS BROUGHT UP ON THE DIRECT.

9          AND AS FAR AS DR. WALKER AND HIS CREDIBILITY, THE

10   THEME THAT HAS PERMEATED THROUGH EACH OF THE MEDICAL

11   DEPOSITIONS THUS FAR IS THAT WHEN WE ARE DEALING WITH THE

12   PAIN SITUATION, YOU ARE HAVING TO TAKE THE PATIENT'S WORD

13   AND TAKE, YOU KNOW, THEIR SUBJECTIVE EXPERIENCE IN ORDER TO

14   FORMULATE AN OBJECTIVE OPINION.  THAT IS SOMETHING THAT IT'S

15   ALL OVER THE DEPOSITIONS THAT WE HAVE TAKEN THUS FAR, AND

16   THE SUGGESTION IS MR. WALKER SOMEHOW ISN'T REPORTING

17   CREDIBLY.

18          SO TO THE EXTENT THAT THAT IS TRUE, WE WANTED TO

19   MAKE SURE, AT LEAST ASK DR. SLAPPEY, DO YOU KNOW MR. WALKER?

20   DO YOU HAVE AN UNDERSTANDING OF WHETHER OR NOT HE IS A

21   CREDIBLE PERSON?  AND HE KNEW HIM PERSONALLY.  AND THAT

22   WAS -- THAT CAME OUT AGAIN IN HIS DIRECT.  THE QUESTION WAS,

23   DO YOU KNOW MR. WALKER, HE SAID MEDICALLY OR PERSONALLY.

24   AND SO I BELIEVE THAT IT WAS BROUGHT UP IN DIRECT.

25   THEREFORE, WE ASKED THE QUESTIONS ON CROSS TO MAKE SURE THAT

1    TO THE EXTENT THOSE ISSUES CAME UP, THAT THEY ARE ANSWERED.

2         MR. HERGENROETHER:  YOUR HONOR, WE ARE LOOKING AT

3    A WORD TRANSCRIPT.  THE FIRST TIME THE WORD "DR. EMPTING"

4    COMES UP WAS DURING THEIR CROSS OF DR. EMPTING IN THAT

5    DEPOSITION.  I THINK MAYBE THERE IS A WORD LISTING AT THE

6    BACK OF THE DEPOSITION.  I THINK THE FIRST TIME -- PAGE 37

7    IS THE FIRST TIME THAT "EMPTING" IS MENTIONED.  THAT IS

8    DURING THEIR CROSS.  SO THEY BROUGHT UP DR. EMPTING, SAID

9    YOU REFERRED HIM OUT THERE, IN AN ATTEMPT TO BOLSTER, WHICH

10   IS WELL OUTSIDE THE SCOPE OF THE DIRECT, BECAUSE WE DIDN'T

11   EVEN SAY "EMPTING" IN THE DIRECT.  AND THE SAME THING WOULD

12   BE TRUE AS TO THEY THEN ASKED DR. SLAPPEY IN THEIR CROSS,

13   "SO DO YOU KNOW JOCK WALKER OUTSIDE OF YOUR TREATMENT OF

14   HIM?"  "YEAH, I KNOW HIM.  I HAVE LIVED HERE FOR AWHILE."

15   AND THEN THEY GO ON TO ATTEMPT TO BOLSTER THAT AFTER THEY'VE

16   ASKED HIM THE QUESTION "YOU KNOW HIM OUTSIDE OF YOUR MEDICAL

17   CONTEXT, CORRECT?"  WE NEVER ASKED THAT QUESTION ABOUT WHAT

18   DO YOU THINK ABOUT JOCK WALKER, WHAT ARE YOUR OPINIONS OF

19   JOCK WALKER.  WE DON'T DEVELOP ANY TESTIMONY ON DIRECT THAT

20   RELATES TO -- THAT AT ALL TOUCHES MR. WALKER'S CREDIBILITY.

21        MR. MOFFETT:  PAGE 46.

22        MR. HERGENROETHER:  THAT IS ON PAGE 46 WHERE THEY

23   BEGIN TO DEVELOP THE TESTIMONY TO BOLSTER THE CREDIBILITY OF

24   MR. WALKER.  BUT IT CERTAINLY IS OUTSIDE THE SCOPE OF THE

25   DIRECT, AND I THINK IF YOU WOULD LIKE WE CAN WALK THROUGH IT

```
 1    AND I CAN SHOW YOU THAT THEY HAVE NOT LAID A PROPER
 2    FOUNDATION, THEY HAVE NOT ASKED THE APPROPRIATE QUESTIONS.
 3    THE CREDIBILITY WASN'T INITIALLY ATTACKED.  I THINK THEY ARE
 4    GOING TO HAVE A TOUGH TIME SHOWING YOUR HONOR WHERE IN THIS
 5    DEPOSITION WE ATTACKED EITHER EMPTING OR PORTER'S
 6    CREDIBILITY -- SORRY -- MR. WALKER'S CREDIBILITY.  SO I
 7    THINK IT'S INAPPROPRIATE TO ALLOW THEM TO BOLSTER IN THIS
 8    WAY.  RULE 608 A, YOUR HONOR,
 9              THE COURT:  THAT IS WHERE I AM AT.
10              MR. HERGENROETHER:  OKAY.  GOOD.  FOR EXAMPLE,
11    YOUR HONOR, I WILL BURDEN YOU WITH SPECIFICS.  IF YOU LOOK
12    ON PAGE 46, LINE 9 THROUGH 10.  THE QUESTION IS, "HE IS A
13    GOOD MAN, ISN'T HE?"  AND THE ANSWER IS, "HE IS."  THE
14    QUESTION "HE IS A GOOD MAN" DOES NOT SEEK INFORMATION ABOUT
15    THE WITNESS'S CHARACTER FOR TRUTHFULNESS.
16              THE COURT:  I WILL SUSTAIN THAT OBJECTION.
17              MR. HERGENROETHER:  THANK YOU, YOUR HONOR.
18              MR. MOFFETT:  I THINK THAT'S IT.
19              MR. HERGENROETHER:  AND THEN THERE ARE, ON PAGE
20    48, LINES 8 THROUGH THE END OF THE -- THROUGH LINE 24,
21    SORRY.  ON PAGE 48.  THEY GET INTO THE QUESTION OF, "IS HE
22    RESPECTED IN THE COMMUNITY?"  YOUR HONOR, YOU HAVE TO --
23    "RESPECTED IN THE COMMUNITY" DOES NOT GO TO CHARACTER FOR
24    TRUTHFULNESS OR UNTRUTHFULNESS.  YOU ESTABLISH THAT YOU KNOW
25    THE PERSON'S CHARACTER FOR TRUTHFULNESS OR UNTRUTHFULNESS IN
```

1    THE COMMUNITY, AND THEN YOU ASK THEM WHAT THAT CHARACTER IS

2    FOR TRUTHFULNESS OR UNTRUTHFULNESS, NOT IS HE RESPECTED.  IT

3    DOES NOT GO TO TRUTHFULNESS OR UNTRUTHFULNESS.  IT IS ALSO

4    OUTSIDE THE SCOPE OF THE DIRECT BECAUSE WE NEVER ATTACKED

5    MR. WALKER'S RESPECT IN THE COMMUNITY OR HIS CHARACTER FOR

6    TRUTHFULNESS ON UNTRUTHFULNESS.

7            THE COURT:  I AM INCLINED TO AGREE WITH THE

8    DEFENDANTS ON THIS.

9            MR. HERGENROETHER:  THEN ON PAGE 47 LINES 11

10   THROUGH 17, HE GETS INTO THE QUESTION IS AND WAS JOCK A

11   WHINER OR A COMPLAINER.  I THINK ONCE AGAIN YOU'RE ASKING

12   FOR HIS CHARACTER FOR WHINING AND COMPLAINING, AND I DON'T

13   KNOW THAT THAT IS AN APPROPRIATE WAY TO BOLSTER SOMEONE'S

14   CREDIBILITY, BECAUSE YOU ARE ATTEMPTING TO SAY, WELL, HE IS

15   NOT A WHINER OR COMPLAINER SO YOU SHOULD BELIEVE HIM WHEN HE

16   SAID HE IS IN PAIN.  AND IT IS ALSO OUTSIDE THE SCOPE OF THE

17   DIRECT.

18           THE COURT:  I DISAGREE WITH THAT.  WE WILL ALLOW

19   THAT EVIDENCE.

20           MR. MOFFETT:  WHAT ABOUT THIS ONE RIGHT HERE?

21           MR. HERGENROETHER:  CORRECT.  SO THE QUESTION AT

22   THE END OF PAGE 46, "IS JOCK AN HONEST GUY."  ONCE AGAIN,

23   THAT DOES NOT STATE HIS -- THE 11TH CIRCUIT STATES THAT YOU

24   LAY A PROPER FOUNDATION FOR THE ADMISSION OF REPUTATION

25   TESTIMONY BY SHOWING THAT THE WITNESS IS ACQUAINTED WITH THE

1  PERSON UNDER ATTACK, YOU SHOW AN ACQUAINTANCE WITH THE

2  COMMUNITY IN WHICH HE HAS LIVED AND THE CIRCLES HE HAS MOVED

3  SO AS TO SPEAK WITH AUTHORITY IN REGARDS TO HOW HE IS

4  GENERALLY REGARDED IN THE COMMUNITY, NOT BY THE WITNESS

5  PERSONALLY.  THAT IS A PERSONAL OPINION, NOT HOW IS THE

6  WITNESS VIEWED IN THE COMMUNITY, WHAT IS HIS REPUTATION FOR

7  TRUTHFULNESS OR UNTRUTHFULNESS IN THE COMMUNITY.  THAT IS

8  IMPROPER.

9        MR. NORMAN:  IF I MAY, YOUR HONOR.  THE WHOLE

10  ISSUE AS TO DEFENSES WITH REGARD TO DAMAGES IS THAT JOCK

11  WALKER IS A MALINGERER, BEEN AN ISSUE THE WHOLE TIME.  IF

12  YOU WILL READ THE ENTIRE DEPOSITION, YOU WILL SEE THOSE

13  QUESTIONS, "DR. SLAPPEY, DO YOU KNOW JOCK WALKER?"

14  "UH-HUH."  "HOW DO YOU KNOW HIM?"  "IN THE COMMUNITY."  AND

15  THEN HE GETS TO THE SERIES OF QUESTIONS.  THIS ISSUE IS

16  RELEVANT.  THE DEFENSE IS FIGHTING SO HARD TO KEEP IT OUT

17  BECAUSE THEY WANT TO ATTACK AND STAB JOCK WALKER'S CHARACTER

18  AND TRUTHFUL ON ONE SIDE, AND THEY WANT TO KEEP OUT WHAT

19  OTHER PEOPLE VIEW OF HIM ON THE OTHER.  AND THE PLAINTIFFS

20  WOULD THEREFORE RESPECTFULLY URGE THIS COURT NOT TO DELETE

21  THIS SECTION.

22        THE COURT:  I AM GOING TO TAKE OUT THE QUESTION,

23  "HE IS A GOOD MAN ISN'T HE?"  AND THEN, "HE IS."  I DON'T

24  THINK THAT IS A PROPER QUESTION.

25        MR. HERGENROETHER:  YOUR HONOR, I MIGHT ALSO POINT

```
 1    OUT, IF YOU ARE GOING TO OMIT THE GOOD MAN --
 2              THE COURT:  I'VE GOT TO OMIT THE NEXT SENTENCE.
 3              MR. HERGENROETHER:  I THINK YOU HAVE TO OMIT THE
 4    NEXT QUESTION AND ANSWER.
 5              THE COURT:  RIGHT.  AND THE QUESTION ISN'T ASKING
 6    THE WITNESS TO TESTIFY ABOUT MR. WALKER'S REPUTATION FOR
 7    HAVING A CHARACTER FOR TRUTHFULNESS OR UNTRUTHFULNESS.
 8    THAT'S NOT WHAT IT IS ASKING, SO I WILL SUSTAIN THE
 9    OBJECTION.
10              MR. MOFFETT:  DOES THAT BEGIN ON LINE 9 WITH THE
11    QUESTION AND CONTINUE DOWN THROUGH I GUESS LINE -- I GUESS
12    IT CONTINUES ON TO THE NEXT PAGE, BECAUSE WE GET TO THIS
13    HONEST QUESTION.
14              THE COURT:  NO.  IT DEFINITELY CONTINUES THROUGH
15    LINE 24.  I WILL APPLY THE SAME RULING TO THIS HERE.  IF THE
16    QUESTION HAD BEEN WHAT IS HIS REPUTATION FOR HAVING A
17    CHARACTER FOR TRUTHFULNESS OR UNTRUTHFULNESS, OR WORDS TO
18    THAT EFFECT, THE QUESTION WOULD HAVE BEEN PERMISSIBLE.  BUT
19    THE QUESTION DOES NOT FIT WITHIN THE SCOPE AUTHORIZED BY
20    RULE 608 A.
21              MR. MOFFETT:  DID WE COVER LINES 11 THROUGH 14,
22    JUDGE, ON PAGE 47?
23              MR. NORMAN:  I BELIEVE THE COURT HAS ALREADY
24    RULED.
25              THE COURT:  WHICH LINES, MATT?
```

1          MR. MOFFETT:  LINES 11 THROUGH 14 ON PAGE 47?

2          THE COURT:  YEAH THEY ARE COMING OUT -- OH, 47?

3          MR. NORMAN:  IT IS MY UNDERSTANDING THAT THE COURT

4     HAS RULED ON THAT, AND THEY ARE STAYING IN.

5          THE COURT:  THAT IS CORRECT.

6          MR. MOFFETT:  SO WE ARE LEAVING IN 11 THROUGH 14

7     ON PAGE 47?

8          THE COURT:  RIGHT.  TAKE OUTLINES 15 THROUGH 17.

9          MR. MOFFETT:  OKAY.  TAKE OUT 15 THROUGH 17.

10          MR. HERGENROETHER:  YOUR HONOR, DID WE GET A

11     RULING ON PAGE 48 LINE 8 THROUGH 24?  IF WE DID, I

12     APOLOGIZE.

13          THE COURT:  YOU GOT A RULING ON LINES 8 THROUGH

14     14.  THAT IS GOING TO BE STRICKEN.  BUT I AM NOT GOING TO

15     STRIKE LINE 16 THROUGH THE END OF THE DEPOSITION.

16          MR. NORMAN:  WILL THAT BE LINE 15?

17          MR. BLASKA:  YOU ARE ON THE WRONG PAGE.

18          THE COURT:  WELL, LINE 15 SAYS "BY MR. NORMAN."

19          MR. MOFFETT:  8 THROUGH 14 IS COMING OUT, ON PAGE

20     48.  JUDGE, DO YOU WANT ME TO TAKE OUT MY OBJECTION OR JUST

21     LEAVE IT IN THE VIDEO?

22          THE COURT:  TAKE IT OUT.  OKAY.  IS THAT IT WITH

23     THAT DEPOSITION?

24          MR. HERGENROETHER:  YES.

25          MR. BLASKA:  YES IT IS, YOUR HONOR.

```
 1              THE COURT:  OKAY.  THIS MOTION TO BIFURCATE TRIAL
 2  OR REQUEST FOR BIFURCATION IS DENIED.  I AM NOT GOING TO
 3  BIFURCATE THE TRIAL.
 4              MR. MOFFETT:  JUDGE, YOU KNOW WE WITHDREW THAT.  I
 5  DON'T WANT YOU TO GET MAD AT ME FOR FILING IT.
 6              THE COURT:  WHAT IS THAT?
 7              MR. MOFFETT:  I DON'T WANT YOU TO BE MAD AT ME FOR
 8  FILING IT.  I ADMIT THAT WE WITHDREW IT THIS MORNING, BUT I
 9  DIDN'T WANT YOU TO BE MAD AT ME FOR FILING IT.
10              THE COURT:  NO.
11              MR. MOFFETT:  I JUST HAD TO WAIT UNTIL I GOT
12  APPROVAL TO WITHDRAW IT.
13              MR. BLASKA:  MR. MOFFETT WAS IMPRESSED WITH OUR
14  BRIEF, APPARENTLY.
15              MR. MOFFETT:  I KNEW, YOU KNOW, YOU WANT TO TRY
16  THE CASE AND BE DONE WITH IT.
17              THE COURT:  WHAT I WANT TO TALK ABOUT NOW IS THE
18  POSSIBLE CERTIFICATION OF THE QUESTION ISSUE.  I DO NOT WANT
19  TO TRY THIS CASE TWICE.
20              MR. MOFFETT:  I UNDERSTAND.
21              THE COURT:  AND I'VE GOT TO SAY THAT I AM OF THE
22  OPINION THAT THE STATUTE DOES NOT APPLY IN A CASE LIKE THIS.
23  THAT OPINION BY THE COURT OF APPEALS IN THE INTRAFAMILY
24  IMMUNITY CONTEXT, I DO NOT -- FIRST OF ALL, IT IS NOT
25  BINDING ON THE COURT BECAUSE IT WAS A PER CURIAM DECISION,
```

1    OR A DECISION WHERE ONE OF THE THREE JUDGES ON THE PANEL

2    CONCURRED IN THE JUDGMENT ONLY, AND BY THE COURT OF APPEALS'

3    OWN RULES THAT IS NOT BINDING OPINION.  IT IS NOT BINDING

4    AUTHORITY ON THE COURT.  AND I BELIEVE THE STATUTE BEING IN

5    DEROGATION OF THE COMMON LAW WILL BE CONSTRUED VERY

6    NARROWLY, AND I WOULD BE VERY SURPRISED IF THE GEORGIA

7    SUPREME COURT CONCLUDED THAT THIS STATUTE ALLOWS FOR THE

8    DEFENDANTS TO ATTRIBUTE FAULT IN A PERSONAL INJURY CASE

9    WHERE THE EMPLOYEE WAS INJURED AT WORK TO THE THIRD PARTY OR

10   NONPARTY EMPLOYER.  THAT IS JUST MY THOUGHTS ON READING IT.

11   AND I COULD BE DEAD WRONG, I DON'T KNOW, BUT THAT IS MY

12   IMPRESSION OF HOW THE LAW IS ON IT.

13            BUT I AM SITTING HERE TRYING TO THINK OF A REASON

14   WE SHOULD TRY THIS CASE ON MONDAY, EVEN THOUGH WE HAVE GONE

15   THROUGH ALL OF THIS TROUBLE TODAY.  I WANTED TO GET THROUGH

16   THIS, AND I KNOW WE STILL HAVE TO DEAL WITH THE DISCOVERY

17   ISSUE AND THE TAX RETURNS, WHICH I AM GOING TO DEAL WITH

18   THAT IN A MINUTE, BUT WHAT IS THE PLAINTIFF'S POSITION ON

19   THIS?  DO YOU WANT ME TO CERTIFY THE QUESTION?

20            MR. NORMAN:  YES, YOUR HONOR.  AND THE QUESTION

21   THAT -- THIS IS JUST A SUGGESTION FOR THE CERTIFIED

22   QUESTION.  AND THIS ANSWER IS -- I COULDN'T FIND AN ANSWER

23   IN GEORGIA.  I DON'T THINK MR. MOFFETT COULD EITHER.  "DOES

24   APPORTIONMENT APPLY TO A NONPARTY EMPLOYER THAT IS EXEMPT

25   FROM TORT LIABILITY BASED ON WORKERS COMPENSATION?"  THAT IS

1    THE ISSUE.  THAT IS THE ISSUE.

2              THE COURT:  RIGHT.

3              MR. NORMAN:  NOW, I THINK IT IS RELEVANT, AND I

4    DID THIS BECAUSE I WAS SITTING THERE WHEN I WAS THINKING

5    ABOUT IT AND I WENT, THIS IS A -- WE ARE IN A CONUNDRUM,

6    BECAUSE THIS IS A VERY IMPORTANT QUESTION.  AND THE

7    APPORTIONMENT STATUTE HAS BEEN A FOCUS OF GREAT ATTENTION

8    BEFORE THE GEORGIA SUPREME COURT AS WE SPEAK.  AS WE SPEAK,

9    THE GEORGIA COURT OF APPEALS IN ZALDIVAR VERSUS PRICKETT,

10   THEY HELD THIS:  APPORTIONMENT STATUTE DOES NOT PERMIT THE

11   DEFENDANT IN A MOTOR VEHICLE PERSONAL INJURY CASE TO INCLUDE

12   THE PLAINTIFF'S EMPLOYER AS A NONPARTY AGAINST WHOM FAULT

13   CAN BE ASSESSED UNDER THE THEORY OF NEGLIGENT ENTRUSTMENT."

14   NOW THAT WAS A DIFFERENT ISSUE, I THINK IT IS STILL

15   IMPORTANT, AND I THINK IT'S RELEVANT.  THE GEORGIA SUPREME

16   COURT GRANTED CERTIORARI ON THAT, AND THAT IS PENDING BEFORE

17   THE COURT.

18             HAVING A LITTLE BIT OF EXPERIENCE IN THE APPELLATE

19   COURTS, I THINK BECAUSE THAT ISSUE IS PENDING I WOULD HOPE

20   THE SUPREME COURT WOULD RULE RATHER QUICKLY.  IF THIS ISSUE

21   CAME UP AFTER TRIAL, AND THE CASE WENT TO THE 11TH CIRCUIT,

22   I HAVE VERY LITTLE DOUBT, UNLESS SOMETHING HAPPENED BETWEEN

23   NOW AND THEN, IF ONE OF THE PARTIES HAD TO TAKE IT UP, THAT

24   THE 11TH CIRCUIT WOULD CERTIFY THE QUESTION.

25             SO YES, THE PLAINTIFFS ARE OF THE POSITION WE DO

1    NOT LIKE THE DELAY.  WE EXPLAINED IT TO OUR CLIENTS, BOTH OF

2    THEM, AT GREAT LENGTH, AND THEY UNDERSTOOD, BECAUSE THEY

3    DON'T WANT TO GO THROUGH THIS AGAIN EITHER.

4          THE COURT:  ALL RIGHT.  MATT?

5          MR. MOFFETT:  MAYBE I AM WRONG, AND MAYBE WE JUST

6    DON'T SEE IT THE SAME WAY, BUT WHEN I LOOK AT THE STATUTE IT

7    SAYS THAT YOU ASSESS FAULT AGAINST ALL PERSONS OR ENTITIES

8    WHO CONTRIBUTED TO THE INJURY OR DAMAGE REGARDLESS OF

9    WHETHER THEY COULD HAVE BEEN NAMED AS A PARTY TO THE SUIT.

10   SO TO ME, IT ANSWERS THE QUESTION.  IF THEY WANT TO CONTEND

11   YOU CAN'T SUE YOUR EMPLOYER, WE ALL KNOW THAT, BUT THE

12   STATUTE COVERS THAT.

13         MR. NORMAN:  YOUR HONOR, THE PLAINTIFFS'S

14   POSITION, NO MATTER WHICH WAY THIS COURT RULES, AND THE

15   PLAINTIFF AGREES WITH THIS COURT'S INTERPRETATION OF THE

16   STATUTE, BUT EVEN IF THIS COURT RULED IN OUR FAVOR ON THIS

17   ISSUE RIGHT HERE AND NOW, IT WOULD STILL BE A QUESTION AND

18   THERE WOULD STILL BE A CLOUD LOOMING OVER THIS CASE, EVEN IF

19   WE WON RIGHT NOW.  BECAUSE NO DOUBT MR. MOFFETT WOULD HAVE A

20   DUTY TO CHALLENGE THAT RULING LATER ON.  SO THAT'S THE ONLY

21   REASON WHY THE PLAINTIFFS RESPECTFULLY URGE THIS COURT TO

22   CERTIFY THIS QUESTION WITH HOPES THAT IT WOULD MOVE ALONG TO

23   THE APPELLATE PROCESS FAIRLY QUICKLY.  IT IS MY OPINION THAT

24   IT WILL PROBABLY BE QUICKER THAN OTHER CASES, NUMBER ONE

25   BECAUSE IT IS A CERTIFIED QUESTION FROM THIS HONORABLE

1    COURT, AND NUMBER TWO, THERE IS AN ISSUE IN THE GEORGIA

2    SUPREME COURT RIGHT NOW WHICH IS ALONG THE SAME -- IT IS IN

3    THE SAME FIELD, IT'S ALONG THE SAME LINE.

4           SO I THINK IT WOULDN'T BE ONE OF THOSE TWO-TERM

5    CASES.  OF COURSE THE GEORGIA COURT OF APPEALS AND THE

6    SUPREME COURT HAVE A TWO-TERM RULE WHERE NO CASE CAN BE MORE

7    THAN TEN MONTHS OLD, ROUGHLY, BUT I THINK THIS ONE WILL

8    BE RATHER -- THE ANSWER WILL BE ANSWERED MUCH MORE QUICKLY,

9    WHETHER THIS COURT RULED ONE WAY OR THE OTHER.

10          THE COURT:  I AM SURPRISED, MATT, THAT YOU DON'T

11   WANT ME TO CERTIFY IT.

12          MR. MOFFETT:  WELL, IF YOUR HONOR GRANTED THEIR

13   MOTION AND PROHIBITED THE APPORTIONMENT IN THE CASE, IN THE

14   EVENT WE WIN THE CASE, THERE WOULDN'T BE ANYTHING TO APPEAL.

15          THE COURT:  ALL RIGHT.  WELL, I AM GOING TO

16   CERTIFY THE QUESTION.

17          MR. MOFFETT:  OKAY.

18          THE COURT:  I THINK THAT'S THE WISE COURSE OF WHAT

19   TO DO.

20          MR. MOFFETT:  CAN YOU GIVE ME THE BENEFIT OF YOUR

21   WISDOM?  TELL ME WHERE YOU THINK I AM GOING WRONG ON THIS.

22   I AM MISSING THE BOAT, JUDGE.  I GUESS I WILL JUST ADD, I

23   DON'T KNOW THAT THE SUPREME COURT WILL TAKE IT BECAUSE OF

24   THE STATUTORY LANGUAGE THAT SAYS YOU CAN NAME ANYBODY THAT

25   COULD HAVE BEEN OR COULD NOT HAVE BEEN NAMED.  I MEAN, IF

1    THE ARGUMENT IS YOU CAN'T SUE YOUR EMPLOYER, WELL, OKAY THE

2    STATUTE COVERS IT.  IT SAYS THAT YOU CAN NAME ANYBODY, EVEN

3    IF YOU COULDN'T SUE THEM.

4         MR. NORMAN:  THE RESPONSE TO THAT, YOUR HONOR, IS

5    THAT THE SUPREME COURT WILL TAKE IT.  THEY HAVE TO TAKE IT.

6         MR. MOFFETT:  WHY?

7         MR. NORMAN:  BECAUSE IN THE SUPREME COURT RULES IT

8    MAKES PROVISION FOR FEDERAL JUDGES TO CERTIFY QUESTIONS OF

9    STATE LAW THAT QUITE FRANKLY ONLY THE STATE COURTS CAN

10   INTERPRET.  THIS IS A STATUTE WHICH IS DEROGATION OF THE

11   COMMON LAW.  IF THERE IS AN AMBIGUITY HERE, AND I WILL

12   CONCEDE IT IS ARGUABLE, BUT IT'S NOT SETTLED.

13        THE COURT:  YEAH, MATT, I THINK IT IS ARGUABLE.

14   THERE IS NO QUESTION ABOUT IT.

15        MR. MOFFETT:  OKAY.  IS THERE ANY WAY WE CAN GET

16   THIS CASE TRIED REGARDLESS?  IS THERE ANY WAY WE CAN

17   CREATIVELY TRY THIS THING SO WE DON'T HAVE TO SIT AROUND FOR

18   ANOTHER 6, 9, 12 MONTHS?  YOU AND I HAVE TRIED TO BE

19   CREATIVE, DANA, AND GET THIS THING DONE.

20        MR. NORMAN:  WELL, I DON'T THINK THERE IS, FROM

21   THE PLAINTIFF'S PERSPECTIVE, BECAUSE WHEN YOU ARE DEALING

22   WITH APPORTIONMENT YOU ARE DEALING BLAME.  IF APPORTIONMENT

23   IS OUT OF THE PICTURE, BLAME IS OUT OF THE PICTURE, AND THE

24   ONLY ISSUE THEN WOULD BE INTERVENING CAUSE, BECAUSE THAT IS

25   THE CLOSEST CORRELATION TO APPORTIONMENT.  IS THE

1   INTERVENING CAUSE OF SOME OTHER PARTY WHO, YOU KNOW, FOOLED

2   WITH THE MACHINE OR -- BUT BLAME WOULD BE OUT OF THE

3   PICTURE.  AND I THINK THIS CASE IS ALL FOCUSED IN ON PUTTING

4   BLAME ELSEWHERE.

5        MR. MOFFETT:  I THINK I CAN BLAME THE EMPLOYER,

6   EVEN IF THEY ARE NOT ON THE VERDICT FORM.  IT IS A PROXIMATE

7   CAUSE ARGUMENT, AND MY EXPERIENCE IS JURIES OFTEN DON'T

8   APPORTION, EVEN IF YOU'VE GOT A JOHN DOE CRIMINAL, FOR

9   EXAMPLE, ON THE VERDICT FORM.  SO I THINK BLAME AND FAULT

10  CAN BE ARGUED AS PART OF PROXIMATE CAUSE, EVEN IF THEY ARE

11  NOT ON THE VERDICT FORM.

12        THE COURT:  ALL RIGHT.  I WILL TAKE -- I AM GOING

13  TO CERTIFY THE QUESTION.

14        THE ONLY ISSUE THAT WE REALLY NEED TO DEAL WITH

15  LEFT HERE TODAY IS ABOUT THESE TAX RETURNS, AND I'VE GOT

16  MIXED FEELINGS ON THIS.  ON THE ONE HAND I KNOW WHY THE

17  DEFENDANTS WANTED THESE TAX RETURNS.  ON THE OTHER HAND IT

18  IS A LITTLE BIT LATE TO COME TO THE JUDGE THREE OR FOUR DAYS

19  BEFORE THE TRIAL STARTS SAYING I WANT SOME HELP, I NEED SOME

20  RELIEF IN GETTING THESE TAX RETURNS.  CAN YOU UNDERSTAND

21  THAT?

22        MR. MOFFETT:  JUDGE, I CAN, BUT WE'VE BEEN TRYING

23  TO RESOLVE IT SINCE LAST YEAR WITH OPPOSING COUNSEL.  AND

24  THE ONLY REASON WE'VE COME TO YOU NOW IS BECAUSE WE JUST

25  COULDN'T GET IT RESOLVED.  BUT YOU KNOW, WE ARE TRYING TO

1   FOLLOW THE STANDING ORDER AND RESOLVE IT.  AND JUDGE, THIS

2   IS A SERIOUS ISSUE ON MANY DIFFERENT LEVELS BECAUSE, THINK

3   ABOUT THIS, WE HAVE A LOSS OF CONSORTIUM CLAIM.  MR. WALKER

4   HAS BEEN FILING AS HEAD OF HOUSEHOLD SINCE YEAR 2008, TWO

5   YEARS BEFORE THIS INCIDENT.  TO FILE AS HEAD OF HOUSEHOLD

6   YOU HAVE TO BE UNMARRIED OR CONSIDERED UNMARRIED.  IF HE IS

7   UNMARRIED HIS WIFE DOESN'T HAVE A LOSS OF CONSORTIUM CLAIM.

8   IF HE IS CONSIDERED UNMARRIED THAT MEANS THEY HAVEN'T BEEN

9   LIVING IN THE SAME HOUSEHOLD FOR THE LAST SIX MONTHS OF THE

10  TAX YEAR, ACCORDING TO IRS REGULATIONS, AND THAT IS

11  IMPEACHMENT EVIDENCE AGAINST HIS WIFE WHO TESTIFIED

12  DIFFERENTLY IN HER DEPOSITION.  IT IS VERY VERY IMPORTANT.

13          ALSO, WHEN MR. BLASKA HIRED HIS FORENSIC ECONOMIST

14  HE TOLD HIM TO MAKE THE ASSUMPTION THAT THE MAN WOULD NEVER

15  WORK AGAIN.  WELL, IN THE YEAR OF 2012, TWO YEARS AFTER THE

16  ACCIDENT, HE IS REPORTING $13,000 OF INCOME AND TAKING AN

17  EARNED INCOME TAX CREDIT.  WE CERTAINLY WOULD LIKE TO KNOW

18  WHO IS PAYING HIM, WHERE HE IS GETTING THAT MONEY.  THAT IS

19  ABSOLUTELY GOING TO AFFECT HIS DAMAGES CLAIM AND HOW IT IS

20  CALCULATED.

21          THE COURT:  WHY IS IT SO DIFFICULT TO GET THE TAX

22  RETURNS?

23          MR. BLASKA:  WELL INITIALLY, JUDGE, WE AGREED TO

24  PROVIDE AN IRS AUTHORIZATION FOR DEFENSE COUNSEL TO OBTAIN

25  THEM.  FOR WHATEVER REASON THE IRS WOULDN'T PROVIDE THEM.

1    AND WHEN THE -- WE DISCUSSED THIS ISSUE I BELIEVE IN

2    DECEMBER, AND I APPROACHED MR. WALKER WITH IT AND ASKED HIM

3    WHETHER OR NOT HE WOULD COULD ACCESS IT THROUGH THE PORTAL.

4    AND NOT TO BLAME A MAN WHO IS NOT HERE, BUT IT TOOK HIM A

5    LONG TIME TO ACCESS THE PORTALS.  HE HAD TO GET THE HELP OF

6    FAMILY MEMBERS.  I TOLD HIM TO PRINT OFF YOUR RETURN.

7         I HAVE NEVER DONE IT MYSELF ON THE PORTAL.  HE

8    GAVE MY ESSENTIALLY -- I BELIEVE WE SUBMITTED IT TO THE

9    COURT.  IF WE HAVEN'T, WE CAN SEND IT IN, BUT IT'S NOT A

10   1040 FORM.  AND SO I CERTAINLY UNDERSTAND OPPOSING COUNSEL'S

11   POSITION THAT THE TAX RETURNS THAT WERE PROVIDED AREN'T VERY

12   HELPFUL.  IF ANYTHING, THEY RAISE MORE QUESTIONS.

13        I DID GO WITH MR. WALKER TO THE DEPARTMENT OF

14   REVENUE, SPENT NEARLY AN ENTIRE DAY THERE WITH HIM, TO GET

15   THE CERTIFIED COPIES OF HIS FORM 500 FOR THE STATE OF

16   GEORGIA.  I DON'T KNOW IF THOSE ARE HELPFUL OR NOT TO

17   DEFENSE COUNSEL, OR IF THAT ANSWERS ANY QUESTIONS, BUT THE

18   SHORT ANSWER, JUDGE, WE TRIED TO DO IT THE EASY WAY WITH AN

19   AUTHORIZATION AND THE IRS WITHOUT ALLOW IT.  I TRIED TO HAVE

20   MY CLIENT DO IT THROUGH THE PORTAL.  FINALLY HE GETS ME

21   RETURNS, I BELIEVE IT WAS, WHAT, LAST WEEK, AND THEY WEREN'T

22   SATISFACTORY FOR DEFENSE COUNSEL.  THE ONLY SOLUTION THAT I

23   CAN THINK OF IS FOR ME TO GO WITH HIM DOWN TO THE IRS OFFICE

24   IN ATLANTA, THE SAME WAY I DID FOR THE STATE, TO OBTAIN

25   THESE, TO OBTAIN THE ACTUAL 1040'S.

1          THE COURT:  ALL RIGHT.  I THINK WITH THE

2    CERTIFICATION OF THE QUESTION, THAT WE'VE REMOVED THE TIME

3    PRESSURE.  SO JUST GO AHEAD AND DO THAT AND GET IT DONE BY

4    THE END OF NEXT WEEK.

5          MR. BLASKA:  YES, SIR.

6          THE COURT:  ALL RIGHT, GENTLEMEN.  I THINK THAT'S

7    EVERYTHING WE NEED TO COVER SO FAR.  I HAVE GONE THROUGH THE

8    VOIR DIRE, AND WE WILL HAVE ANOTHER PRETRIAL CONFERENCE

9    BEFORE WE TRY THE CASE, A MUCH BRIEFER ONE.  BUT I WILL TELL

10   YOU THEN WHAT THE RULINGS ARE ON THE PROPOSED VOIR DIRE

11   QUESTIONS.

12         MR. BLASKA:  YOUR HONOR, MAY I SEEK CLARIFICATION

13   ON JUST ONE ISSUE WITH THE TAX?  OPPOSING COUNSEL FILED A

14   REQUEST FOR MARRIAGE LICENSE, SEVERAL OTHER ITEMS IN

15   ADDITION TO JUST MR. WALKER'S RETURNS.  DO I NEED TO GET ALL

16   OF THOSE AS WELL, OR IS IT JUST MR. WALKER'S RETURNS AS WE

17   INITIALLY --

18         THE COURT:  NO.  GET THE MARRIAGE LICENSE AS WELL.

19         MR. BLASKA:  EVERYTHING IN THAT REQUEST, JUST TO

20   BE CLEAR, YOUR HONOR, IS WHAT I NEED TO OBTAIN BY NEXT WEEK?

21         THE COURT:  YES.

22         MR. BLASKA:  OKAY.  VERY GOOD.

23         MR. MOFFETT:  A ONE-WEEK TRIAL, JUDGE?  IS THAT

24   YOUR HONOR'S RULING?  THIS IS GOING TO BE A ONE-WEEK TRIAL?

25         THE COURT:  THAT IS MY UNDERSTANDING, FROM WHAT I

1    HAVE HEARD FROM YOU GUYS.

2            MR. NORMAN:  IF I MAY BE HEARD ON THAT, YOUR

3    HONOR.  WE WERE JUST TALKING ABOUT THAT ISSUE.  WE DON'T

4    WANT TO MISLEAD THE COURT, BUT WE HAVE, I GUESS DEPENDING ON

5    THE CERTIFIED QUESTION ANSWER, IT IS GOING TO AFFECT THE

6    NUMBER OF WITNESSES THAT THE PLAINTIFF WOULD HAVE.  SO IT

7    COULD BE SHORTER, DEPENDING ON THE ANSWER, OR IT COULD BE

8    ABOUT A WEEK, JUST TO LET THE COURT KNOW.

9            THE COURT:  ALL RIGHT.  WELL, IT WAS GOOD TO SEE

10   YOU GUYS.  WE WILL SEE YOU IN PROBABLY I AM GUESSING SIX TO

11   EIGHT MONTHS.

12                (END OF HEARING AT 11:32 A.M.)

13                        * * * * *

14                REPORTER'S CERTIFICATION

15

16       I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

17   FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

18

19                        _____

                          LORI BURGESS
20                        OFFICIAL COURT REPORTER
                          UNITED STATES DISTRICT COURT
21                        NORTHERN DISTRICT OF GEORGIA

22                        DATE:  APRIL 3, 2015

23

24

25